## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No. 1:17-CV-22568-CIV-COOKE/Goodman

**ARTHENIA JOYNER, et al.,**
        **Plaintiff,**

**vs.**

**PRESIDENTIAL ADVISORY COMMISSION**
**ON ELECTION INTEGRITY, et al.,**
        **Defendants.**
_____/

## PLAINTIFFS' OPPSOSITION TO
## FEDERAL DEFENDANTS' MOTION TO DISMISS[1]

Federal Defendants urge dismissal [DE 53].  They make five arguments.  First, they argue Plaintiffs fail to state a FACA claim.  They claim the Commission complied with FACA's openness and transparency requirements. Second, they argue Plaintiffs have no standing or "private right of action" to sue for FACA violations. Third, Defendants assert Plaintiffs fail to state a claim for exceeding the Executive Order's scope. Fourth, Defendants argue that Plaintiffs fail to state a claim for Separation of Powers and Article II Breach, and lack standing. Fifth, Defendants claim Plaintiffs have failed to state a claim under the Paper Reduction Act. And finally, Defendants claim Plaintiffs the Court lacks subject matter jurisdiction.

The Federal Defendants are wrong.

---

[1] The parties agreed to allow the Plaintiffs to utilize extra pages in responding to the Federal Defendants' motion seeking excess pages for their Motion to Dismiss (DE50).

First, the Supreme Court and Eleventh Circuit hold that affected citizens and organizations have standing to sue for FACA violations. Second, the Complaint plainly states a claim for FACA violations – most flagrant, the out-of-the-sunshine effort to amass and centralize a national voter database. Third, Plaintiffs state a claim that the Executive has breached Separation of Powers. The power to centralize a voter database is not an Article II enumerated or implied power, nor is it a power that Congress delegated. Further, the Supreme Court holds that those affected have standing to challenge the Executive's usurpation of power. Fourth, the Executive Order does not command the Commission to nationalize a voter database. However, since FACA provides the scope of the Commission's authority, that count can be merged into the FACA count. Fifth, Plaintiffs have stated a claim under the Paperwork Reduction Act. Finally, the Complaint invokes and raises federal questions that the Courts uniformly recognize subject matter jurisdiction over.

## FACTS

President Trump lost the popular vote by 3 million. President Trump claims he actually won it, but that millions of fraudulent votes were cast for his opponent. He tweeted that "so many cities are corrupt," that voter fraud is "very common." Thus, he proclaimed the need for "a major investigation into VOTER FRAUD."[2]

---

[2] Complaint, par. 30-35. Quoted language at par. 32 and 34. (emphasis not supplied).

PITA WEBER DEL PRADO

To win the next election, the Trump Administration must suppress votes. Because Florida is a large, swing state, there is no denying that the vote suppression effort will impact Florida and its duly registered voters.

Enter the Presidential Advisory Commission on Election Integrity. Enter its Vice-Chair, Chris Kobach, a well-known "voter fraud" disciple with a history of Federal Courts stopping his voter suppression efforts as Kansas Secretary of State.[3]

Established by Executive Order and chartered under the Federal Advisory Committee Act, the Commission is subject to FACA's mandate as well as the implementing regulations by the General Services Administration, the agency in charge of funding and administering it. FACA's intent is simple: Commissions must be open, accountable, and transparent.

Defendants paint an inaccurately rosy picture of FACA compliance, pointing to the Commission's filing of a charter, providing notice for its purported first meeting, opening it to the public, and purportedly disclosing documents.[4]

But the key to this suit's legitimacy is the elephant in the room: what happened at the un-noticed June 28 meeting, *three weeks before* the purported first meeting.

---

[3] Complaint, par. 24 *citing* League of Women Voters of United States v. Newby, 838 F.3d 1 (D.C. Cir. 2016); Fish v. Kobach, 840 F.3d 170 (10th Cir. 2016).  (Kobach's efforts to require proof of citizenship, and to change the federal form to also require that were struck down)
[4] Motion to Dismiss, pp. 23-29.

On that date, the Commission set out on its unprecedented effort to amass and centralize a national voter database.[5] What occurred there, what led to it, what was its agenda, and what was discussed remains a mystery.

The Commission met on that June 28, *in secret and without notice*, and in flagrant violation of FACA's requirements of openness, transparency, and the public right of contemporaneous participation. That very day Vice Chair Kobach sent the letter to all 50 States, requesting that each submit voter roll data by July 14 – five days before the Commission's first purported meeting.[6] By July 6, Florida wrote that it would comply, with some provisos.[7]

Plaintiffs filed this complaint because of the immediate threat the Commission posed and its undisclosed agenda behind taking and centralizing their voter data. Concern mounted. Many states refused to comply.[8]

That central question – the purpose of a centralizing a voter database – has never been answered, at the time of this Complaint *or since*. Plaintiffs and the Public have every reason to fear the intentions of the Commission and Vice Chair Kobach,

---

[5] Complaint, par. 80-85
[6] Complaint, par. 80-85
[7] Complaint, par. 61 and Exh H to Complaint
[8] Complaint, par. 53 – 63.

PITA WEBER DEL PRADO

with his voter-suppression history. Plaintiffs have justified fear to the imminent danger that this Commission presents against their fundamental right to vote.

Plaintiffs all have a stake in this democracy and the vote's fundamental role to our nation's existence. So, naturally, all Plaintiffs have an individualized, specific stake in this Commission's activities and its final product.

And for the Organizational Plaintiffs – the ACLU and FIC – their members vote, have the same rights, and express the same concerns. The organizations have a documented history of working and litigating for protection of this fundamental freedom. They have the same stake. Both have dedicated resources to this effort.

Plaintiffs seek to obtain assurances, fortified by federal court orders, to make sure this Commission fully complies with FACA. Plaintiffs seek to insure that the Commission's final product is not the result of a hidden or corrupt agenda.

Since this Court's initial ruling, the Commission's activities have been a moving and elusive target. More has occurred. Plaintiff is in the process of amending to bring the new, related developments to the Court's attention. The supplemental allegations will include, among others: (1) That on July 26, again in secret and without public notice, the Commission met again. (2) That day, Vice Chair Kobach sent a second letter asking States to upload voter data to a "White House Computer

system."[9] (3) The Public, and Plaintiffs, had no contemporaneous input. (4) Florida has since uploaded Floridians' voter data to the White House.

Plaintiffs and the Public remain in the dark about what will be done with their data or what the purpose of this database is. None of this was discussed or even placed on the Commission's agenda for its second meeting, held on September 12.[10] And it is well known that Kobach employs a deeply flawed, computer program, which targets people with same names and labels them fraudulent voters.[11] By secretly tinkering with the Data behind closed White House doors, the Commission has up-ended FACA's very soul of openness and transparency. The Public is locked out, prevented from ensuring accountability, prevented from ensuring that the Commission is not wasting Public money.

> FACA's principal purpose was to enhance the public accountability of advisory committees established by the

---

[9] The letter is apparently not posted on the White House website, but a readout that the letter was done is.  https://www.whitehouse.gov/the-press-office/2017/06/28/readout-vice-presidents-call-presidential-advisory-commission-election.  The letter is available elsewhere at the Washington Post. https://www.washingtonpost.com/blogs/wonkblog/files/2017/06/PEIC-Letter-to-Connecticut-1.pdf?tid=a_inl

[10] Agenda, Second Meeting of the (Commission); https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/pacei-updated-meeting-agenda-09122017.pdf; To view the meeting, see https://www.youtube.com/watch?v=gSXN-uq2Ju8.

[11] "The GOP's Stealth War Against Voters" (describing the "Crosscheck" program, started by Kris Kobach), http://www.rollingstone.com/politics/features/the-gops-stealth-war-against-voters-w435890.  See also The Washington Post, "This Anti-Voter-Fraud Program gets it Wrong Over 99% of the Time.  The GOP Wants to Take it Nationwide." https://www.washingtonpost.com/news/wonk/wp/2017/07/20/this-anti-voter-fraud-program-gets-it-wrong-over-99-of-the-time-the-gop-wants-to-take-it-nationwide/?utm_term=.5c8850ff66f5

PITA WEBER DEL PRADO

Executive Branch and to reduce wasteful expenditures on them.

*Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 459 (1989).

Adding to the alarm, Commission Member and Maine Sec. of State Mathew Dunlap just sued the Commission itself alleging FACA violations. These include (1) secret meetings and agendas to which he was denied access, (2) the Commission is unlawfully imbalanced, (3) the entire Commission is not included on setting agendas or inviting guest speakers to meetings, (4) an agenda is being pursued and not shared with the Commission as a whole.[12] The proposed amended complaint will include these and other developing allegations.

The Commission's voter database threatens the Public's and Plaintiffs' fundamental right to vote. It is a threat to our very democracy.

The Supreme Court instructs vigilance against those who threaten the vote:

> (S)ince the right to exercise the franchise in a free and unimpaired manner is preservative of other basic civil and political rights, any alleged infringement of the right of citizens to vote must be carefully and meticulously scrutinized.

Kramer v. Union Free School Dist. No. 15 (U.S. 1969).[13]

---

[12] Trump Voter Fraud Commission is Sued – By One of Its Own Members. https://www.propublica.org/article/trump-voter-fraud-commission-dunlap-lawsuit.  The just-filed lawsuit is not yet on Pacer.  The Complaint is available on this ProPublica site.  See also Portland Press Herald, http://www.pressherald.com/2017/11/09/maine-secretary-of-state-files-federal-lawsuit-against-trump-voting-commission/
[13] 395 U.S. 621, 626 (U.S. 1969)

PITA WEBER DEL PRADO

## PLAINTIFFS STATE A CLAIM UNDER THE FEDERAL ADVISORY COMMITTEE ACT

The Federal Defendants argue the Commission complied with FACA by filing a charter, providing notice for its purported first meeting, opening it to the public, and claiming to have disclosed documents.[14]

But the Federal Defendants minimize the meritorious, well-plead issues in the Complaint. Defendants contend that when the Commission set out to amass and centralize a national voter database, the secret meeting was merely an "organizational call" related to "preparatory (and) administrative work," "gathering information," and "research."[15]

Defendants say the Commission did not violate FACA by "beginning its research efforts" and that "plaintiffs do not cite to any provision in FACA . . . that an advisory committee may not conduct business . . . prior to holding its first meeting, *nor can they*."[16]

Defendants argument must be rejected. Plaintiffs' complaint cites the very FACA sections (and regulations) that demand openness and transparency:[17]

---

[14] Motion to Dismiss, pp. 23-29.
[15] Motion, p. 23.
[16] *Id.*
[17] Complaint, Count I.

- "Each advisory committee meeting shall be open to the public."[18]

*The Meeting was Not Open to the Public*

- "(T)imely notice of each such meeting shall be published in the Federal Register."[19]

*The Public Received Zero Notice*

- "Interested persons shall be permitted to attend, appear before, or file statements . .." [20]

*The Meeting was Held in Secret*

- "Detailed minutes of each meeting of each advisory committee shall be kept. . .. The accuracy of all minutes shall be certified to by the chairman of the advisory committee."[21]

*No Known Minutes Exist*

- "(T)he records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying . ..."[22]

*The Only Record is Kobach's Letter[23]*

*No Agenda, No working Paper, No Nothing Otherwise*

---

[18] 5 USC App. 2 § (a)(1)

[19] *Id.* at (a)(2)

[20] *Id.* at (a)(3)

[21] *Id*. at (c)

[22] *Id*. at (b)

[23] Motion, p. 29.  "(C)opies of the June 28 letter , as well as the responses the Commission received (from States), are posted on the Commission's Webpage." <u>Nothing</u> else is about this meeting is posted.

PITA WEBER DEL PRADO

9

The Commission's FACA violations are flagrant. Pretending that the June 28 meeting was "organizational" or a permitted "research effort" is absurd. Undertaking an effort to amass and centralize a national voter database for undisclosed purposes is not a mere "research effort." It is unprecedented misconduct.

Just like the Commission, the Federal Defendants do not bother to tell us *what* is being researched and for *what* purpose.[24] Not even the motion turns on that light.

The Eleventh Circuit holds that FACA demands openness and that the Public's right to participate must be contemporaneous with the Committee's process:

> Because FACA's dictates emphasize the importance of openness and debate, the timing of such observation and comment is crucial to compliance with the statute. Public observation and comment *must be contemporaneous* to the Advisory committee process itself.
>
> A simple "excuse us" cannot be sufficient. It would make FACA meaningless, something Congress certainly did not intend.
>
> Alabama-Tombigbee Rivers Coalition v. Department of Interior (11th Cir. 1994).[25] (emphasis supplied)

---

[24] Motion, at 23.
[25] 26 F.3d 1103, 1106 *citing* Public Citizen v. National Economic Comm'n, 703 F. Supp 113, 129 (D.D.C. 1989).

PITA WEBER DEL PRADO

Yet here, the Public, *and Plaintiffs*, had no contemporaneous opportunity to observe and comment on that June 28 "undertaking" or have any say over what the Commission is doing with their voter data since.

That the June 28 meeting occurred in the past  (as other violations) is of no consequence.   That undertaking taints the outcome of any final product this Commission may produce, and that makes its transgressions *still* consequential:

> (T)o allow the government to use the product of a tainted (FACA) procedure would circumvent the very policy that serves as the foundation of the Act.
>
> It is simply insufficient for the government to contend that . . . courts should not interfere or be concerned with (what it claims are) minor transgressions. Quite the contrary. Because the matters are so serious and of such great concern to so many with differing interests, *it is absolutely necessary that the procedures established by Congress be followed to the letter*. Congress outlined in detail exactly what procedures were to be used and *it is the responsibility of the courts to see that such laws are carried out.*[26]
>
> Alabama-Tombigbee (emphasis supplied)

Accordingly, Plaintiffs have stated a claim for FACA violations.

---

[26] *Id.* at 107 and FN 9.

PITA WEBER DEL PRADO

## PLAINTIFFS HAVE FACA STANDING AND A PRIVATE RIGHT OF ACTION

Defendant argue that the Supreme Court's holding in <u>Alexander v. Sandoval</u>[27] eliminated Plaintiffs right to sue the Commission. And then they go on to cite several district court cases, some incorrectly,[28] for that proposition.

Defendant's reliance on <u>Sandoval</u> is misplaced. <u>Sandoval</u> has nothing to do with FACA. It does not even mention FACA.

When the Supreme Court did, indeed, look at FACA, it held that an organizational Plaintiff and individual citizens had standing and the right to sue:

> "(R)efusal to Permit (Public Citizen) to scrutinize (the Committee's) activities to the extent FACA allows constitutes a sufficiently distinctly injury to provide standing to sue."

> "(Public Citizen) might gain significant relief if they prevail in their (FACA) suit.   (Public Citizen's) potential gains are undoubtedly sufficient to give them standing."

> "The fact that other citizens or groups of citizens might make the same complaint . . . under FACA does not lessen (Public Citizen's) injury . . ....."

> <u>Public Citizen v. U.S. Dept. of Justice</u> 491 U.S. 440, 449-50 (U.S. 1989).

---

[27] 532 U.S. 275 (2001).  Motion at 12-13.

[28] E.g., <u>Freedom Watch v. Obama</u>, 930 F. Supp 98 (D.D.C. 2013), does not hold that there was no FACA private right of action. The Court held that the group advising the President was not a FACA committee to begin with.

And the Eleventh Circuit, before *and after* <u>Sandoval</u>, holds that affected entities have standing for FACA violations, and consequently, the right to sue:

> Tribe's allegations of a past and *continuing* injury . . . caused by federal agencies' . . .actual and continuing reliance on recommendations that were arrived at in violation of FACA establishes injury in fact and causation for present purposes.
>
> Tribe in its complaint met the standard for establishing standing at the pleading stage.
>
> <u>Miccosukee Tribe of Indians of Florida v. Southern Everglades Restoration Alliance,</u> 304 F.3d 1076, 1081 (11th Cir. 2002)

Here, plaintiffs have alleged an actual or imminent concrete injury, alleging numerous FACA violations. Plaintiffs have alleged the imminent threat posed by the Commission amassing and centralizing a national voter database, with an undisclosed agenda, under the control of Vice Chair Kobach.

Plaintiffs, individually and through their members, are voters with a stake in this democracy. They have an interest in avoiding the outcome of a tainted, baseless, corrupt, or illegitimate result. As the Fifth Circuit put it thusly:

> "If Courts do not enforce FACA . . ., FACA will be toothless, merely aspirational legislation. If FACA has no teeth, the work product of spuriously formed advisory groups may obtain political legitimacy that it does not deserve."

PITA WEBER DEL PRADO

Cargill, Inc. v. U.S. 173 F.3d 323, 341 (5th Cir. 1999) (miners and organizational group had standing to ensure FACA compliance).[29]

Plaintiffs have alleged the on-going failure to disclose documents. And at the core, the failure to disclose the need for, the purpose, and the end-game of this voter database.[30]

Plaintiffs have proven causation – all of the transgressions were caused by the Commissions failure to follow FACA.

And finally, redressability – this Court has the power to redress future compliance with FACA. In a case brought by organizational and individual plaintiffs, as here, the Eleventh Circuit holds that injunctive relief is the only vehicle to ensure future compliance with FACA:

> We find injunctive relief as the only vehicle that carries the sufficient remedial effect to ensure future compliance with FACA's clear requirements. Anything less would be tantamount to nothing.
>
> Alabama-Tombigbee. [31]

---

[29] 173 F.3d 323 (5th Cir 1999)
[30] Complaint, par. 105-109.
[31] 26 F.3d at 1107. See also Public Citizen v. U.S. Dept. of Justice, 491 U.S. 440 (1989); Miccosukee Tribe of Indians of FL v. Southern Everglades Restoration Alliance, 304 F.3d 1076 (11th Cir 2002) (decided after Sandoval); Cargill, Inc. v. United States, 173 F.3d 323 (1999).

PITA WEBER DEL PRADO

Those D.C. District cases cited by the Federal Defendants finding no right of private action under FACA nonetheless do provide a remedy for FACA transgressions under the Administrative Procedure Act:

> "Although Plaintiffs do not have a cause of action that arises under FACA, they are nevertheless entitled to enforce FACA's substantive requirements through the judicial review provisions of the APA.
>
> The Administrative Procedures Act confers a right of judicial review on a person who feels aggrieved by an agency: 'A person suffering legal wrong because of agency action, or adversely *affected or aggrieved by agency action* within the meaning of a relevant statute, is entitled to judicial review thereof.'5 U.S.C. § 702."
>
> International Brominated Solvents Ass'n v. American Conference of Governmental Indus. Hygienists, Inc. (M.D.Ga. 2008)[32] (emphasis supplied).
>
> (A)nalyzing under the APA a claim to enforce the same provisions of the FACAat issue here . . ."[t]he type of actions and inaction challenged here, [such as] holding meetings, refusing to disclose documents [and] failure to comply with FACA's other procedural requirements, certainly fall within the ... definition of agency action."

---

[32] 625 F.Supp.2d 1310, 1320. Indeed, a number of courts have allowed plaintiffs to proceed with APA actions based on alleged FACAviolations. *See, e.g., Idaho Wool Growers Ass'n v. Schafer,* 637 F.Supp.2d 868, 872 n. 3 (D.Idaho 2009)(acknowledging that a plaintiff may bring a claim for FACA violations under the APA); *Int'l Brominated Solvents Ass'n v. Am. Conference of Governmental Indus. Hygienists,* 393 F.Supp.2d 1362, 1378 (M.D.Ga.2005) (stating that "[n]othing in the applicable FACA provisions precludes judicial review under the APA"); *Utah Ass'n of Counties,* 316 F.Supp.2d at 1184 (requiring that a plaintiff complaining of FACAviolations do so via the APA); *Natural Resources Def. Council v. Abraham,* 223 F.Supp.2d at 193(allowing the plaintiffs to proceed on their APA claims for FACA violations).

PITA WEBER DEL PRADO

<u>Judicial Watch, Inc. v. U.S. Dept. of Commerce</u>
(D.D.C.2010).[33]

Here, "(FACA) charges the GSA with prescribing regulatory guidelines and management controls applicable to advisory committees."[34] The GSA is a federal agency.[35] ACA charges the GSA with determining if the Committee is "carrying out its purpose," "whether the responsibilities assigned to it should be revised," whether it should be merged with other advisory committees," or "whether it should be abolished."[36]

The Complaint here sets forth that the Executive Order charges the GSA with funding, administering the Commission and more: "(T)he GSA shall provide the Commission with administrative services, funds, facilities, staff, equipment, and other support services . . .."[37] The GSA is sued here because it is the agency with oversight, management, and control over the Commission.

Accordingly, Plaintiffs have standing under <u>Public Citizen</u> and Eleventh Circuit law as well under those District Court decisions holding that parties "aggrieved or affected" by FACA violations have standing under the APA.

---

[33] 736 F.Supp.2d 24, 30
[34] <u>Cumock v. Gore</u>, 180 F.3d 282 (D.C. Cir. 1999). See also 5 USC App. 2 § 7.
[35] https://www.gsa.gov/about-us/background-and-history
[36] 5 USC App. 2 § 7.
[37] Exec Order at Sec. 7, No. 13,799, 82 Fed. Reg. 22,389, 22390. Exhibit A to Complaint.

PITA WEBER DEL PRADO

As for the ACLU and EIC, those groups include voters directly affected by the Commission. Organizational membership is directly affected, devoting core principle resources to challenge the Commission. These associations additionally have standing as the representatives of their members. *E.g.,* National Motor Freight Assn. v. United States, 372 U.S. 246 (1963). Here, as the Complaint make clear, the members are suffering immediate or threatened injury as a result of the Commission's challenged action of the sort that state a plain case or controversy the members would be able to assert individually. Sierra Club v. Morton, 405 U.S. 727, 734-741 (1972). Because the claims' nature and relief sought do not make the individual participation of each injured member indispensable to full and complete resolution, the associations are appropriately named as representatives of, and entitled to invoke the court's jurisdiction. Warth v. Seldin, 422 U.S. 490, 511 (1975).

## PLAINTIFFS HAVE STANDING AND STATE A CLAIM FOR BREACH OF ARTICLE II

Defendants cite no statute that gives the Executive or a Presidential Commission the power to amass and centralize a voter database. The best they can do is cite FACA for this authority. That is a long and impossible stretch.

PITA WEBER DEL PRADO

Not even President Truman had the authority to nationalize, by Exec. Order, the steel mills while facing a national strike during a war. See Youngstown Sheet & Tube Co. v. Sawyer.[38] His Commander-in-Chief powers were not enough.

Yet here, Defendants claim this unprecedented Executive power based on an unsubstantiated tweet that millions of Americans cast fraudulent votes. At least President Truman was acting on documented reality. This Executive is not.

But Defendants argue that the database is for short-term "study" and information gathering purposes. So what? President Truman's attempted takeover of the mills was, presumably, also intended to be a short term measure. In any event, even if the data is only stored for a fixed time, the danger Plaintiffs are concerned exactly what this Commission does with the data while it does have it.

As well-pled in the Complaint (¶¶117 -129), the Constitution gives Congress exclusive power over the vote and election system.[39] The Constitution gives no such power to the Executive. Any power the Executive has is its general enforcement power and its obligation to enforce Congressional acts and laws – *faithfully*. The Congress has the power to regulate elections.[40]

---

[38] 343 U.S. 579 (1952).
[39] Art. I, Sec. 4, U.S. Const.
[40] Art. I, Sec. 4, U.S. Const.

PITA WEBER DEL PRADO

All amendments expanding the right to vote give Congress "the power to enforce this article by appropriate legislation."[41] *The Executive is not mentioned in any of those amendments.* And Congress has created the exclusive, legal regime over the election enforcement, the Right to Vote, safeguard the integrity of voting systems, and to otherwise regulate the integrity of elections.[42]

Here, the Executive (and its Commission) has no express or implied power, and no Congressionally delegated power whatsoever to nationalize a voter database – *a database it seeks to create for reasons that remain unknown*.

Just as Justice Frankfurter observed in <u>Youngstown</u>, what we see in this Commission is an Executive acting at its *lowest* Constitutional ebb of power. Any power grab like that must be scrutinized – our Constitutional equilibrium is at stake:

> "When the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter. Presidential claim to a power at once so conclusive and preclusive must be scrutinized with caution, for what is at stake is the equilibrium established by our constitutional system."

> <u>Youngstown Sheet & Tube Co. v. Sawyer</u> (U.S. 1952).[43]

---

[41] Am. 14, 15, 19, 24 and 26 of U.S. Const.

[42] E.g) The Voting Rights Act of 1965; The National Voter Registration Act of 1993 (Motor Voter Law); and the Help America Vote Act of 2002. The Eleventh Circuit held that the "Help America Vote Act represents Congress's attempt to strike a balance between promoting voter access to ballots on the one hand and preventing voter impersonation fraud on the other." <u>Florida State Conference of N.A.A.C.P. v. Browning</u>, 522 F.3d 1153, 1168 (11th Cir. 2008).

[43] 343 U.S. 579, 637–38 (1952)

PITA WEBER DEL PRADO

Accordingly, Plaintiffs have stated a claim for Breach of Constitutional Separation of Powers and Article II. And just as those who were threatened with the centralizing of their mills had standing, Plaintiffs have standing to challenge the taking of their voting data to be stored and used for unknown purposes.

## PLAINTIFFS HAVE STANDING AND MAKE A CLAIM UNDER THE PRA

Plaintiffs state a claim under the Paperwork Reduction Act. As held in Livestock Mktg. Ass'n v. U.S. Dep't of Agric.,[44] the PRA allows judicial enforcement through a private right of action. Livestock Mktg. enjoined PRA violations because the PRA's language "clearly provides that the protective section may be raised in the form of a 'complete defense, or bar or otherwise at any time . . . .'" This "[could not] be more expansive." *Id*. at 831.

Thus, contrary to the Federal Defendants' argument, the PRA provides both a private right of action and private remedy under Alexander v. Sandoval.[45]

The PRA was designed for multiple purposes, most notably to minimize public and state government burden, to ensure the "greatest possible public benefit from and maximize the utility of information created, collected, maintained, used,

---

[44] 132 F. Supp.2d 817, 831 (D.S.D. 2001)
[45] 532 U.S 275, 286-87 (2001) ("private rights of action to enforce federal law must be created by Congress.").

PITA WEBER DEL PRADO

20

shared and disseminated by or for the Federal Government."[46]

For purposes of the PRA, "the term 'agency' means any executive or military Government or Government controlled corporation, or other establishment in the executive branch (including the Executive Office of the President), or any independent regulatory agency . . . ."[47] The Commission is not otherwise excluded by the PRA. More particularly, the Executive Office of the President is specifically included as an agency bound by the PRA.

Agencies like the Commission, when seeking information from more than 10 respondents, must receive approval from OMB prior to information collection. OMB is tasked with promulgating PRA regulations. But prior to collection of information directed at more than ten respondents — namely the 50 States and D.C. — this Commission did not strictly comply with PRA prerequisites.[48] The deficiencies, all identified with precision in the Complaint (¶¶136-138), include, in part, preparing a review for the OMB identifying the plan for collection of information, inventory, and control numbers for each item, and detailing that information with specificity.

The Complaint asserts with particularity that the Commission did not "provide 60-day notice in the Federal Register, and otherwise consult with members of the

---

[46] 44 U.S.C. § 3501 (2017).
[47] 44 U.S.C. § 3502 (2017).
[48] *See* 44 U.S.C. § 3506 (2017).

PITA WEBER DEL PRADO

public and affected agencies concerning each proposed collection of information,"
44 U.S.C. § 3506(c)(2)(A), and did not solicit required public comments. These are
not merely ministerial directives, but are substantive obligations imposed on the
Commission in order to implement the Congressional mandate for agency
transparency, openness, and public participation. Here, the Commission instead
acted arbitrarily and in secret, likely because its purpose was to aggregate massive
amounts of voter information in order to interfere with and suppress the vote.

The Federal Defendants' collection of the information sought prior to
complying with the requirements of the PRA is arbitrary, capricious, an abuse of
discretion, and otherwise not in accordance with 5 U.S.C. § 706(2)(a) or (c). The
Federal Defendants cannot collect any information unless and until the Commission
and the Defendants comply with the PRA. Plaintiffs have rights, delineated by
Congress in the language of the PRA, to enforce its requirements. As the Complaint
identified, and as recent developments have corroborated, there is vast evidence
Federal Defendants breached the PRA. They will continue to do so absent
enforcement by this Court.

PITA WEBER DEL PRADO

## PLAINTIFFS STATE A CLAIM FOR EXCEEDING EXECUTIVE ORDER AUTHORITY

The Order does not command the Commission to amass and centralize a national voter database. Interestingly, not even its own Charter mentions it.[49] Plaintiffs' right to contest that fact should not be any different that the right to hold the Commission accountable under FACA. Because this claim is directly intertwined with the Count I FACA claim, merging these counts may facilitate judicial efficiency, although not essential.[50]

## CONCLUSION

As demonstrated by the authorities cited and the arguments presented, this Court has subject matter jurisdiction over all claims. The Court must deny the Federal Defendants' Motion.

Dated: November 13, 2017

*S/ H.K. Skip Pita*
**H.K. SKIP PITA**
Florida Bar No. 101974
**PITA WEBER DEL PRADO**
9350 S. Dixie Hwy., Suite 1200
Miami, FL 33156
Tel: (305) 670-2889 Fax:
(305) 670-6666
spita@pwdlawfirm.com

*S/ Jason B. Blank*
**JASON B. BLANK**
Florida Bar No. 28826
**HABER BLANK, LLP**
888 S. Andrews Ave., Suite 201
Fort Lauderdale, FL 33316
Tel: (954) 767-0300 Fax:
(954) 949-0510
eservice@haberblank.com
jblank@haberblank.com

---

[49] Charter, https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/commission-charter.pdf
[50] 5 U.S.C. App. 2 §9.

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3550
Miami, FL 33131-154
Tel: (305) 789-5989 Fax: (305)
789-5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

*s/ Larry S. Davis*
**LARRY S. DAVIS**
Florida Bar No. 437719
*s/ Shana Korda*
**SHANA KORDA**
Florida Bar No. 109504
**LAW OFFICE OF LARRY S. DAVIS,
P.A.**
1926 Harrisoin Street
Hollywood, FL   33020-5018
Tel:  (954) 927-4249
Fax:  (954) 927-1653
larry@larrysdavislaw.com
shana@larrysdavislaw.com
courtdocs@larrysdavislaw.com

*S/ Marc A. Burton*
**MARC A. BURTON**
Florida Bar No. 95318
*S/ Daniel J. Poterek*
**DANIEL J. POTEREK**
Florida Bar No. 85204
**THE BURTON FIRM, P.A.**
2999 N.E. 191 Street, Suite 805
Miami, Florida 33180
Tel: (305) 705-0888 Fax: (305)
705-0008
mburton@theburtonfirm.com
dpoterek@theburtonfirm.com

*S/ Freddy Funes*
**FREDDY FUNES**
Florida Bar No. 87932
*s/ Gerlad Greenberg*
**GERALD GREENBERG**
Florida Bar No. 440094
*S/ Jarred L. Reiling*
**JARRED L. REILING**
Florida Bar No. 93930
*S/ Adam Schachter*
**ADAM SCHACHTER**
Florida Bar No. 647101
**GELBER SCHACHTER &
GREENBERG, P.A.**
American Civil Liberties Union
Foundation of Florida
1221 Brickell Avenue, Suite 2010
Miami, FL  33131-3224
Tel:  (305) 728-0950
Fax:  (305) 728-0951
jreling@gsgpa.com

PITA WEBER DEL PRADO

_S/ Nancy G. Abudu_
**NANCY G. ABUDU**
Florida Bar No. 111881
Legal Director
**AMERICAN CIVIL LIBERTIES
UNION OF FLORIDA**
4343 W. Flagler Street, Suite 400
Miami, FL  33134
Tel:  786-363-2707
Fax:  786-363-1108
 nabudu@aclufl.org

_S/ Joseph S. Gellar_
**JOSEPH S. GELLER**
Florida Bar No. 292771
**GREENSPOON MARDER**
200 E. Broward Blvd., Suite 1500
Fort Lauderdale, FL  33301
Tel:  (954) 491-1120
Fax:  (954) 331-2037
Joseph.geller@gmlaw.com

PITA WEBER DEL PRADO

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 13, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

*/s/ H.K. Skip Pita*
**H. K. SKIP PITA**

## SERVICE LIST

**H.K. SKIP PITA**
**PITA WEBER DEL PRADO**
9350 S. Dixie Hwy., Suite 1200
Miami, FL 33156
Tel: (305) 670-2889
Fax: (305) 670-6666
spita@pwdlawfirm.com
lalvarez@pwdlawfirm.com
*Co-counsel for Plaintiffs*

**JASON B. BLANK**
**HABER BLANK, LLP**
888 S. Andrews Ave., Suite 201
Fort Lauderdale, FL 33316
Tel: (954) 767-0300
Fax: (954) 949-0510
eservice@haberblank.com
jblank@haberblank.com
*Co-counsel for Plaintiffs*

**BENEDICT P. KUEHNE**
**MICHAEL T. DAVIS**
**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3550
Miami, FL 33131-154
Tel: (305) 789-5989
Fax: (305) 789-5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com
*Co-counsel for Plaintiffs*

PITA WEBER DEL PRADO

**MARC A. BURTON**
**DANIEL J. POTEREK**
**THE BURTON FIRM, P.A.**
2999 N.E. 191 Street, Suite 805
Miami, Florida 33180
Tel: (305) 705-0888
Fax: (305) 705-0008
mburton@theburtonfirm.com
dpoterek@theburtonfirm.com
pleadings@theburtonfirm.com
*Co-counsel for Plaintiffs*

**LARRY S. DAVIS**
**SHANA KORDA**
**LAW OFFICE OF LARRY S. DAVIS, P.A**.
1926 Harrison Street
Hollywood, FL 33020-5018
Tel: (954) 927.4249
Fax: (954) 927-1653
larry@larrysdavislaw.com
shana@larrysdavislaw.com
courtdocs@larrysdavislaw.com
*Co-counsel for Plaintiffs*

**FREDDY FUNES**
**GERALD GREENBERG**
**JARRED L. REILING**
**ADAM SCHACHTER**
**GELBER SCHACHTER & GREENBERG, P.A.**
Cooperating Counsel ACLU Foundation of Florida
1221 Brickell Avenue, Suite 2010
Miami, FL 33131-3224
Tel: (305) 728-0950
Fax: (305) 728-0951

PITA WEBER DEL PRADO

jreiling@gsgpa.com
*Co-counsel for Plaintiffs*

**NANCY G. ABUDU**
Legal Director
**AMERICAN CIVIL LIBERTIES UNION OF FLORIDA**
4343 W. Flagler St., Suite 400
Miami, FL 33134
Tel: (786) 363-2707
Fax: (786) 363-1108
nabudu@aclufl.org
*Co-counsel for Plaintiffs Co-counsel for Plaintiffs*

**JOSEPH S. GELLER**
**GREENSPOON MARDER, P.A.**
200 E. Broward Blvd., Suite 1500
Fort Lauderdale, FL 33301-1874
Tel: (954) 491-1120
Fax: (954) 331-2037
joseph.geller@gmlaw.com
*Co-counsel for Plaintiffs*

**CHAD A. READLER**
**ELIZABETH J. SHAPIRO**
**JOSEPH E. BORSON**
**UNITED STATES DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: (202) 514-1944
Fax: (202) 616-8460
joseph.borson@usdoj.gov
*Counsel for the Federal Government Defendants*

PITA WEBER DEL PRADO

**DAVID A. FUGETT**
(FBN 835935)
General Counsel
david.fugett@dos.myflorida.com
**FLORIDA DEPARTMENT OF STATE**
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Tel: (850) 245-6536
Fax: (850) 245-6127
*Lead Counsel for the Florida*
*Secretary of State*

PITA WEBER DEL PRADO