## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

ARTHENIA JOYNER, *et al.*,  )
  )
  )
                    Plaintiffs,  )
            v.  )  Civil Action No. 17-22568-MGC
  )
  )
PRESIDENTIAL ADVISORY  )
COMMISSION ON ELECTION  )
INTEGRITY, *et al.*,  )
  )
                    Defendants.  )
_____ )

## FEDERAL DEFENDANTS' REPLY MEMORANDUM IN FURTHER SUPPORT OF
## THEIR MOTION TO DISMISS

## INTRODUCTION

Plaintiffs have brought suit against the Presidential Advisory Commission on Election Integrity (the "Commission").  They bring a collection of claims, arguing that the Commission's voluntary request to collect voter registration information that states already make available to the public under their own laws violates the Paperwork Reduction Act, the Executive Order establishing the Commission, and Article II of the U.S. Constitution.  They also allege in their complaint that the Commission has violated various provisions of the Federal Advisory Committee Act ("FACA").  Federal defendants moved to dismiss, arguing that plaintiffs lack Article III standing, that neither FACA, the Paperwork Reduction Act, or the Administrative Procedure Act ("APA") provides a private right of action (and that plaintiffs fail to state a claim under any of these statutes, in any event), and that plaintiffs fail to state a claim under either the Executive Order establishing the Commission or Article II of the U.S. Constitution.

Plaintiffs largely fail to respond to (and thus may be taken to have conceded) this motion. *See, e.g.*, *GolTV, Inc. v. Fox Sports Latin Am. Ltd.*, No. 16-cv-24431, 2017 WL 4155478, at *4 n.7 (S.D. Fla. Sept. 19, 2017) ("When a party fails to respond to an argument or address a claim in a responsive brief, such argument or claim can be deemed abandoned.").  They make no real attempt to show that they have pled facts sufficient to establish that either the individual or organizational plaintiffs have Article III standing for anything beyond a violation of FACA (a claim that fails for other, independent reasons).  Their attempts to find an implicit cause of action for their Paperwork Reduction Act and FACA claims fly in the face of the Supreme Court's decision in *Alexander v. Sandoval*, 532 U.S. 275 (2001).  They make no attempt to show that the Commission is an agency subject to suit under the APA, a requirement to state a claim under that statute.  Nor do they show that the Commission can be sued under Executive Order No. 13,799,

1

much less that the Commission has actually violated the Executive Order.  Finally, their

argument that the President has violated Article II by charging a Commission with studying the

election system ignores the fact that the structure of the Constitution, including the

Recommendations Clause, explicitly gives the President the power to research and suggest topics

for Congressional consideration.  And any speculation that the Commission has ventured beyond

this task is just that, speculation, and cannot state a valid claim.  Accordingly, this Court should

dismiss plaintiffs' complaint.

**ARGUMENT**

## I.      PLAINTIFFS LACK STANDING.

Article III standing is a necessary condition in order for a court to exercise subject-matter

jurisdiction.  *See Warth v. Seldin*, 422 U.S. 490, 498 (1975).  As explained in federal defendants'

opening memorandum, at its "irreducible constitutional minimum," the doctrine of standing

requires a plaintiff to establish three elements: (1) a concrete and particularized injury-in-fact,

either actual or imminent, (2) a causal connection between the injury and the defendants'

challenged conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  Plaintiffs fail to establish in their complaint

or their memorandum in opposition that they have or will imminently suffer a concrete and

particularized injury-in-fact sufficient to confer standing to bring this lawsuit; thus, their

complaint, insofar as it relates to the federal defendants, should be dismissed for lack of

jurisdiction.

Plaintiffs chiefly discuss standing in the context of their FACA claims.  In doing so, they

do not detail how the Commission's activities have caused them to suffer a concrete and

particularized injury and, in fact, largely fail to respond to the federal defendants' arguments.

2

*See* Pls.' Opp'n Fed. Defs.' Mot. Dismiss ("Opp'n") at 12-17, ECF No. 58.  The Supreme Court, however, has instructed that a "plaintiff must demonstrate standing for each claim he seeks to press."  *DaimlerChrysler Corp. v. Cuno*, 437 U.S. 332, 352 (2006).  Accordingly, plaintiffs have failed to satisfy their burden of establishing that they have Article III standing to bring all but their FACA section 10(b) claims.

> ### A.     The Individual Plaintiffs Lack a Concrete Injury.

As discussed in federal defendants' opening memorandum, the five individual plaintiffs lack standing to bring this lawsuit because their generalized "concerns" about and in "oppos[ition]" to the Commission's activities do not constitute a cognizable Article III injury-in-fact.  Fed. Defs.' Mot. Dismiss & Inc. Mem. Law ("MTD") at 9-10, ECF No. 53.  In their opposition memorandum, plaintiffs confirm the generalized nature of their purported injury: "Plaintiffs, individually and through their members, are voters with a stake in this democracy. They have an interest in avoiding the outcome of a tainted, baseless, corrupt, or illegitimate result."  Opp'n at 13.  This is precisely the type of "generalized grievance" that is "inconsistent with the framework of Article III because the impact on plaintiff is plainly undifferentiated and common to all members of the public."  *Lujan*, 504 U.S. at 575 (citation and quotation marks omitted); *see also Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) ("We have repeatedly held that such a 'generalized grievance,' no matter how sincere, is insufficient to confer standing."); *Allen v. Wright*, 468 U.S. 737, 754 (1943) ("[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court."), *abrogated on other grounds by Lexmark Int'l Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).  Nor is plaintiffs' status as "voters" by itself sufficiently particularized to create Article III standing – rather, the Supreme Court and the

3

Eleventh Circuit have both recognized that plaintiff-voters who merely seek to vindicate generalized rights (as opposed to "alleg[ing] concrete and personalized injuries in the form of denials of equal protection or of vote dilution") lack sufficiently concrete injuries to establish jurisdiction. *Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324, 1333 (11th Cir. 2007) (citing *Lance v. Coffman*, 549 U.S. 437 (2007)). Indeed, seeking standing based on a litigant's status as a voter is not fundamentally different than seeking standing based on a litigant's standing as a taxpayer; both essentially raise undifferentiated challenges to government action writ large. *See, e.g.*, *Hein v. Freedom From Religion Found., Inc.*, 551 U.S. 587, 593 (2007) ("It has long been established, however, that the payment of taxes is generally not enough to establish standing to challenge an action taken by the Federal Government."). Because the individual plaintiffs assert no other form of injury, their claims should be dismissed for lack of jurisdiction.

### B.  ACLU-FL and FLIC Lack Representational Standing and Standing to Sue on Their Own Behalf.

In their opening memorandum, federal defendants argued that the ACLU of Florida ("ACLU-FL") and the Florida Immigrant Coalition ("FLIC") have not established that they have either representational standing or standing to sue on their own behalf. MTD at 10-12. Plaintiffs make no attempt in their opposition memorandum to point to facts in the complaint that would establish their standing. These facts must appear in the record and cannot be inferred from a party's briefs. *See, e.g.*, *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990); *see also United States v. One Parcel of Real Estate at 3850 S.W. 126th Court, Miami*, 39 F. Supp. 2d 1370, 1371-72 (S.D. Fla. 1997). In any event, ACLU-FL and FLIC fail to meet their burden.

With respect to representational standing, ACLU-FL and FLIC assert only that "the[ir] members are suffering immediate or threatened injury as a result of the Commission's challenged action of the sort that state[s] a plain case or controversy the members would be able

to assert individually," and "[b]ecause the claims' nature and relief sought do not make the individual participation of each injured member indispensable to full and complete resolution, the associations are appropriately named as representatives of [their members], and entitled to invoke the court's jurisdiction."  Opp'n at 17.  But this conclusory statement merely re-states the requirements of representational standing in a manner insufficient to state a claim.  *See, e.g.*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 954-55 & n.9 (2011) (en banc) (party alleging standing must "do more than offer 'labels and conclusions'") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This statement does not *demonstrate* that the plaintiffs have met those requirements, by, for example, "identify[ing] members who have suffered the requisite harm," *Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009), or even establishing that either plaintiff has members who were cognizably injured.  Indeed, plaintiffs merely assert without any explanation that their purported members are suffering an injury.  Opp'n at 17; Compl. ¶¶ 20-21.  But, as discussed above, these conclusory statements do not identify the alleged injury and are not sufficient to establish Article III standing.

Plaintiffs fare no better with organizational standing.  They say that "[o]rganizational membership is directly affected, devoting core principle resources to challenge the Commission."  Opp'n at 17.  But plaintiffs made no attempt in their complaint to plead facts establishing that the Commission has "impair[ed] [plaintiffs'] ability to engage in projects by forcing the organization to divert resources to counteract those illegal acts."  *Ga. Latino All. for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1259-60 (11th Cir. 2012).  Plaintiffs, for example, fail to demonstrate in their opposition memorandum what resources ACLU-FL and FLIC have supposedly devoted to challenging the Commission.  Because plaintiffs have failed to plead the minimum facts necessary to establish standing, their claims should be dismissed.

5

C.    **Plaintiffs Lack Standing to Challenge the Commission's Alleged Violation of Article II, its Alleged Violation of the Paperwork Reduction Act, and its Alleged Violation of Executive Order No. 13,799.**

As discussed above, plaintiffs largely fail to address the federal defendants' standing arguments.  Instead, they argue that their individual claims confer standing to bring this lawsuit, conflating a cause of action (which they also lack) with Article III standing.  These cursory arguments should be rejected.

With respect to their claim that the Commission has violated Article II of the U.S. Constitution (Count III), plaintiffs state that, "[j]ust as those who were threatened with the centralization of their mills had standing [in *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952)], plaintiffs have standing to challenge the taking of their voting data to be stored and used for unknown purposes."  Opp'n at 20.  But the facts of this case are far removed from *Youngstown*.  There, the government had actually seized the plaintiffs' steel plants, which was such a clear injury-in-fact that the Court never needed to address it.  *See generally Youngstown*, 343 U.S. 579.  Here, by contrast, plaintiffs complain generally about the "taking of their voting data to be stored and used for unknown purposes."  Opp'n at 20.  But they have not established how this collection injures them (except, as discussed above, in a generalized fashion insufficient for Article III standing).  Moreover, to the extent they complain about future injury from potential misuse of the publicly available data that the Commission has collected, they have not pled facts to establish that this "threatened injury is certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013).

Plaintiffs' attempts to establish standing for violations of the Paperwork Reduction Act ("PRA") and Executive Order No. 13,799 (Counts IV & II) fare no better.  While plaintiffs state that they "have standing . . . under the PRA" in the section heading, at no point in the subsequent

discussion do they explain how they have standing.  *See* Opp'n at 20-22.  At best, plaintiffs say

that they "have rights, delineated by Congress in the language of the PRA, to enforce its

requirements," *id.* at 22, but this conflates Article III standing with a private right of action

(which they also lack, *see infra*).[1]  Plaintiffs do not allege, much less show, how the collection of

data by the Commission without complying with the Paperwork Reduction Act causes plaintiffs

any injury.  *See, e.g.*, *Lujan*, 504 U.S. at 575 ("[W]e have held . . . that an injury amounting only

to the alleged violation of a right to have the Government act in accordance with the law was not

judicially cognizable . . . .").  Plaintiffs also make no argument whatsoever for how the

Commission's alleged violations of Executive Order No. 13,799 cause them to suffer an injury-

in-fact sufficient to allow them to invoke this Court's jurisdiction.  Opp'n at 23.

### D.      Plaintiffs Largely Lack Standing to Bring Their FACA Claims.

As acknowledged in federal defendants' opening brief, the federal defendants do not

contend that plaintiffs lack standing to bring claims under FACA section 10(b), 5 U.S.C. app. 2

§ 10(b), to the extent that those claims involve allegations that plaintiffs have been denied

materials they are allegedly entitled to under FACA.  MTD at 8 n.1; *Judicial Watch v. U.S. Dep't*

*of Commerce*, 583 F.3d 871, 873 (D.C. Cir. 2009); *see also Pub. Citizen v. U.S. Dep't of Justice*,

491 U.S. 440, 449-50 (1989).  The question of plaintiffs' standing to raise a FACA section 10(b)

claim, however, is rendered immaterial by plaintiffs' failure to respond to federal defendants'

---

[1] Though plaintiffs try repeatedly to conflate them, *e.g.*, Pls.' Opp'n Fed. Defs.' Mot. Dismiss
("Opp'n") at 13, 20, ECF No. 58, the existence of a private right of action is altogether different
from the concept of Article III standing.  Article III standing implicates the "courts' statutory or
constitutional *power* to adjudicate the case," *Steel Co. v. Citizens for a Better Environment*, 432
U.S. 83, 89 (1998), while the existence of a private right of action defines whether there may be
any remedies for an alleged violation, *see Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  A
plaintiff must have *both* standing and a private right of action to state a claim.  *See Steel Co. v.*
*Citizens for a Better Env't.*, 523 U.S. 83, 89 (1998).  Here, plaintiffs have neither.

legal arguments related to their section 10(b) claim.  *See Jones v. Bank of Am., N.A.*, 564 F.

App'x 432, 434 (11th Cir. 2014) ("[W]hen a party fails to respond to an argument or otherwise

address a claim, the Court deems such argument or claim abandoned.") (citation omitted).

Accordingly, this claim should be dismissed as abandoned.

But to the extent plaintiffs seek to bring other FACA claims alleging procedural injuries –

as they apparently do, *see* Compl. ¶¶ 80, 86, 89, 95, 100; MTD at 21-27 – they must establish a

cognizable injury in fact beyond a mere procedural violation.  As the Supreme Court has held,

"deprivation of a procedural right without some concrete interest that is affected by the

deprivation – a procedural right *in vacuo* – is insufficient to create Article III standing. . . . [and]

[i]t makes no difference that the procedural right has been accorded by Congress."  *Summers*,

555 U.S. at 496-97.  As discussed above, plaintiffs assert only a generalized interest in the law

being followed; they do not identify a "concrete and particularized" injury, *id.* at 493, of the sort

required by the Supreme Court.

The authority cited by plaintiffs is consistent with this requirement.  They cite to

*Miccosukee Tribe of Indians of Florida v. Southern Everglades Restoration Alliance*, 304 F.3d

1076, 1081 (11th Cir. 2002), for the claim that "affected entities have standing for FACA

violations."  Opp'n at 13.  But, there, the Eleventh Circuit found standing based on the fact that

an agency's reliance on an advisory committee's recommendations caused concrete injury (in the

form of modification to a water management plan that damaged tribal land), *Miccouskee*, 304

F.3d at 1081, which is the type of concrete, non-procedural injury the *Summers* Court

contemplated as sufficient for standing.  Plaintiffs lack any comparable injury.  And *Public

Citizen*, 491 U.S. at 459, which plaintiffs also cite, Opp'n at 13, speaks only of plaintiffs'

entitlement to information allegedly due under FACA; it does not mention procedural injuries of

the type governed by *Summers*.  In any event, all of the procedural injuries that plaintiffs pursue occurred in the past, before the complaint was filed.  Under *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983), which plaintiffs entirely fail to address, past injury cannot form the basis for injunctive or declaratory relief.

## II.    PLAINTIFFS LACK A PRIVATE CAUSE OF ACTION TO BRING THEIR FACA AND PAPERWORK REDUCTION ACT CLAIMS.

In order to state a statutory claim, as to which there may be a judicially cognizable remedy, a plaintiff must avail herself of a valid, congressionally created private cause of action. *See, e.g.*, *Sandoval*, 532 U.S. at 286 ("The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create just not a private right but also a private remedy."); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person.").

Plaintiffs lack a private cause of action to bring their FACA and Paperwork Reduction Act claims.  Neither of these statutes provides a private right of action, and while the Administrative Procedure Act ("APA") does provide a private right of action, that right only applies if the defendant is an "agency."  Because the Commission is not an agency for the purposes of the APA – a conclusion already reached by the United States District Court for the District of Columbia and one not seriously challenged by plaintiffs – the APA's cause of action does not apply.  Accordingly, plaintiffs' statutory claims must be dismissed.

### A.    FACA Does Not Provide a Private Right of Action.

As explained in the federal defendants' opening memorandum, in *Sandoval*, the Supreme Court "distils and clarifies the approach" that a court must take to determine whether a statute "creates by implication a private right of action."  *Love v. Delta Air Lines*, 310 F.3d 1347, 1351

(11th Cir. 2002).  In short, "[s]tatutory intent . . . is determinative."  *Sandoval*, 532 U.S. at 286.

As every court to have considered this issue post-*Sandoval* has concluded, including those within

the Eleventh Circuit, FACA does not create a private right of action because there is no evidence

of Congressional intent to confer a private remedy for FACA violations.  *See, e.g.*, *Int'l*

*Brominated Solvents Ass'n ("IBSA") v. Am. Conf. of Gov't Indus.. Hygienists, Inc.*, 625 F. Supp.

2d 1310, 1320 (M.D. Ga. 2008); *IBSA* v. *Am. Conf. of Gov't Indus. Hygienists, Inc.*, 393 F. Supp.

2d 1362, 1377-78 (M.D. Ga. 2005); *see also Colo. Envt'l Coal. v. Wenker*, 353 F.3d 1221, 1234-

35 (10th Cir. 2004); *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 2d 213, 220-21 (D.D.C

2017); *Pebble Ltd P'ship v. EPA*, No. 3:13-cv-171, 2015 WL 12030515, at *2 (D. Alaska June 4,

2015); *Freedom Watch, Inc. v. Obama*, 807 F. Supp. 2d 28, 32-33 (D.D.C. 2011); *Judicial*

*Watch, Inc. v. U.S. Dep't of Commerce*, 736 F. Supp. 2d 24, 30 (D.D.C. 2010); *Utah Ass'n of*

*Counties v. Bush*, 316 F. Supp. 2d 1172, 1194 (D. Utah 2004); *Judicial Watch, Inc. v. Nat'l*

*Energy Policy Dev. Grp.*, 219 F. Supp. 2d 20, 33 (D.D.C. 2002).

      Plaintiffs offer no compelling response to this unbroken line of authority.  They first state

that "[d]efendant[s'] reliance on *Sandoval* is misplaced.  *Sandoval* has nothing to do with FACA.

It does not even mention FACA."  Opp'n at 12.  This argument is frivolous: *Sandoval* sets out

the analytical framework for determining whether *any* statute provides a private right of action.

*Love*, 310 F.3d at 1351.  The fact that *Sandoval* does not mention FACA by name does not

prevent its application in other statutory contexts – that is the very nature of judicial precedent.

*See, e.g., id.* at 1349 (applying *Sandoval* in the context of the Air Carrier Access Act).  Indeed,

only eight pages later in their own brief, plaintiffs recognize that the *Sandoval* analytical

framework applies to statutory provisions outside the original facts of that case.  Opp'n at 20.

Second, plaintiffs point to the Supreme Court's decision in *Public Citizen*, 491 U.S. at 449-50, for the proposition that the court held that plaintiffs "had standing and the right to sue" under FACA.  Opp'n at 12.  But *Public Citizen* – which predates *Sandoval* by twelve years – addressed *standing*, it did not decide whether FACA provided a private right of action.  *Public Citizen*, 491 U.S. at 449-50.  Indeed, because it held that FACA did not apply, it never needed to (and so did not) reach that issue, and this decision is therefore inapplicable to the private right of action question.  *See id*. at 467.  Nor has the Eleventh Circuit held that FACA provides a private right of action.  Plaintiffs rely on *Miccosukee Tribe*, 304 F.3d at 1081, for the proposition that they have standing to bring their FACA claims.  Opp'n at 13.  But that decision never addressed the question of whether there was a private right of action, and therefore it does not control here. *See IBSA*, 393 F. Supp. 2d at 1377 ("[In none of those cases [including *Miccosukee Tribe*] did either the Supreme Court or the court of appeals squarely face the question of whether a private right of action exists under FACA.  Instead the courts were silent on that issue.  Plaintiffs argue that this silence demonstrates that it is an 'accepted' position that FACA contemplates a private right of action.  In the absence of an express holding to that effect, however, this Court cannot in good conscience ignore what it perceives to be *Sandoval*'s obligatory mandate.").

**B.     The Paperwork Reduction Act Does Not Provide a Private Right of Action.**

The Paperwork Reduction Act similarly does not authorize a private right of action, as every post-*Sandoval* court to have consider the question has held.  *See, e.g.*, *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 844 (9th Cir. 1999); *see also Smith v. United States*, No. 98-10288, 2008 WL 5069783, at *1 (5th Cir. Dec. 2, 2008); *Springer v. IRS ex rel. U.S.*, 231 F. App'x 793, 799-800 (10th Cir. 2007); *Al-Sharif v. Bradley*, No. CV 107-050, 2008 WL 410364,

at *4 (S.D. Ga. Feb. 12, 2008); *Korsinsky v. Godici*, No. 05 Civ 2791 (DLC), 2005 WL 2313886,

at *6 (S.D.N.Y. Sept. 22, 2005); *Teledyne, Inc. v. United States*, 50 Fed. Cl. 155, 190 (2001).

Plaintiffs attempt to circumvent this line of cases by citing to the pre-*Sandoval* district

court decision in *Livestock Marketing Association v. U.S. Department of Agriculture*, 132 F.

Supp. 2d 817 (D.S.D. 2001), which held, without meaningful analysis, that the Paperwork

Reduction Act contained a private right of action.  In support of its conclusion, the court cited the

Act's provision that "no person shall be subject to any penalty" for failing to comply with an

information collection that has not been approved in accordance with the Paperwork Reduction

Act, and that "[t]he protection provided by this section may be raised in the form of a complete

defense, bar, or otherwise[.]"  *Livestock Mkt'g*, 132 F. Supp. 2d at 831 (quoting 44 U.S.C.

§ 3512).  *Livestock Marketing* was incorrect.  Even setting aside that *Livestock Marketing* did not

(and could not) follow *Sandoval*'s analysis, as cogently explained by the Tenth Circuit, section

3512 of the Act "creates a defense, not a private right of action."  *Springer*, 231 F. App'x at 799.

The Act may be invoked at any time "as a defense or in a judicial action," but may not be "raised

. . . as a claim in an independent action."  *Id.* at 800; *see also Korsinksy*, 2005 WL 2312866,

at *6 (same).  *Livestock Marketing's* nonbinding, outlier decision should be rejected, and this

Court should follow the unbroken line of authority that properly concluded that the Paperwork

Reduction Act does not provide a private cause of action.

**C.      The APA's Private Right of Action is Not Available to Plaintiffs.**

Finally, plaintiffs cannot rely on the APA's cause of action.  As the federal defendants

stated in their opening memorandum, because neither FACA nor the Paperwork Reduction Act

provide a cause of action, plaintiff can proceed, if at all, only under the APA.  *See* MTD at 14;

Opp'n at 15 & n.32.  But, as further explained in the federal defendants' opening memorandum,

plaintiffs cannot rely on the APA because the APA only applies to agencies, and the Commission is not an agency.

Section 702 of the APA provides that "[a] person suffering legal wrong because of *agency action*, or adversely affected or aggravated by *agency action* within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702 (emphasis added); *see also* 5 U.S.C. § 701(b)(1) (defining "agency" for purposes of the APA). Importantly, then, the APA only provides a private right of action for suits against *federal agencies*. But the Commission is not an agency for the purposes of the APA, because it does not exercise "substantial independent authority." *See* MTD at 14-20 (citing, *e.g.*, *Soucie v. David*, 448 F.2d 1067, 1073-74 (D.C. Cir. 1971); *Elec. Privacy Info. Ctr.* ("*EPIC*") *v. Presidential Advisory Comm'n on Election Integrity*, No. 17-cv-1320 (CKK), 2017 WL 3141907, at *11 (D.D.C. July 24, 2017), *appeal docketed*, No. 17-5171 (D.C. Cir. argued Nov. 21, 2017)).

In their opposition memorandum, plaintiffs never actually claim that the Commission is, in fact, subject to the APA. *See generally* Opp'n. Accordingly, plaintiffs' argument can be deemed to be abandoned. *See Jones*, 564 F. App'x at 434; *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (discussing the consequences of failing to respond to arguments presented in a motion); *Bunche v. ABC Landclearing & Dev., LLC*, No. 6:16-cv-1456, 2017 WL 1460518, at *1 (M.D. Fla. Mar. 1, 2017) (same), *report & recommendation adopted*, No. 16-cv-1456, 2017 WL 1438316 (M.D. Fla. Apr. 24, 2017).[2]

---

[2] Although plaintiffs note, correctly, that courts have allowed plaintiffs to proceed with APA actions based on alleged FACA violations, Opp'n at 15 n.32, all of those cases involved claims *against agencies*. Those cases did not, and could not, hold that an APA action could lie against a non-agency.

Instead, plaintiffs appear to argue that they can bring a FACA claim, through the APA, against the General Services Administration ("GSA") "because it is the agency with oversight, management, and control over the Commission."  Opp'n at 16.  This argument fails for multiple reasons.  First, as addressed in the federal defendants' opening memorandum, plaintiffs "fail to allege any transgression on the part of [GSA in their complaint], nor do they specifically seek relief against [GSA]."  MTD at 20 n.5.

Second, in any event, this argument to impute the Commission to GSA, raised for the first time in plaintiffs' opposition memorandum, fails on the merits.  In support of this argument, plaintiffs selectively cite FACA section 7(b), which tasks the GSA administrator with reviewing the activities of advisory committees, so that the administrator may "make recommendations to the President and to either the agency head or the Congress with respect to actions he believes should be taken."  5 U.S.C. app 2 § 7(b); *see* Opp'n at 16.  But this provision – by its explicit terms – provides GSA with only a limited role in making recommendations related to advisory committees; it says nothing at all about imbuing GSA with "oversight, management, and control over the Commission."  Opp'n at 16.  Plaintiffs also cite to Executive Order No. 13,799, which states that GSA shall provide the Commission with "support services."  *Id.* (citing Exec. Order. No. 13,799, 82 Fed. Reg. 22389, 22389 (May 11, 2017)).  Providing "support services" to the Commission does not, of course, mean that GSA has "oversight, management, and control over the Commission."  *Id.*  Indeed, as discussed in more detail in federal defendants' opening memorandum, the mere fact that a federal agency provides administrative support to a non-agency entity does not transform that entity into an agency.  MTD at 20 (citing *Meyer v. Bush*, 981 F.2d 1288, 1297-98 (D.C. Cir. 1993); *Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, 566 F.3d 219, 224-25 (D.C. Cir. 2009)); *see also EPIC*, 2017 WL 3141907, at *11

(concluding that the fact that GSA provided "administrative . . . [and] support services" did not transform the Commission into an agency).

Accordingly, since neither the Paperwork Reduction Act nor FACA provide a private right of action, and plaintiffs may not avail themselves of the APA's cause of action (because the Commission is not an "agency"), plaintiffs' statutory claims should be dismissed.

### III. PLAINTIFFS FAIL TO STATE FACA AND PAPERWORK REDUCTION ACT CLAIMS.

Even if this Court were to conclude that plaintiffs have a private right of action – and they do not – plaintiffs' FACA and Paperwork Reduction Act claims should be dismissed for failure to state a claim.

#### A. Plaintiffs Largely Concede Their FACA Claims, and Their Remaining Arguments Are Otherwise Unavailing.

In their opening memorandum, the federal defendants addressed each of the FACA claims that plaintiffs raised in their complaint. *See* MTD at 21 (FACA does not prohibit advisory committees from conducting business prior to swearing in its members and holding a meeting, citing Compl. ¶¶ 80-83); *id.* at 22 (FACA does not require advisory committees to identify all of its members prior to conducting business, citing Compl. ¶¶ 86-88); *id.* at 23-24 (the June 28 organizational conference call was not subject to FACA's open access requirements, citing Compl. ¶¶ 91-93); *id.* at 24-27 (the July 19 meeting complied with FACA's open access requirements, citing Compl. ¶¶ 94-99); *id.* at 27-28 (the Commission has complied with FACA's public participation requirements, citing Compl. ¶¶ 100-03); *id.* at 28-29 (the Commission has complied with FACA's disclosure requirements, citing Compl. ¶¶ 104, 106). With a single exception, described below, plaintiffs utterly fail to respond to *any* of these arguments. *See*

Opp'n at 8-11.  Accordingly, their failure to respond should constitute abandonment of these claims.  *See, e.g.*, *Jones*, 564 F. App'x at 434.

Nor, in any event, is the one claim plaintiffs actually respond to – relating to the June 28, 2017, organizational call – meritorious.  *See* Opp'n at 8-10.  As explained in the federal defendants' opening memorandum, MTD at 23-24, FACA's open access requirements do not apply to advisory committee activities related to "preparatory work," *i.e.,* meetings that "gather information, conduct research, or analyze relevant issues and facts in preparation for a meeting of the advisory committee," and to "administrative work," *i.e.*, the "discuss[ion of] administrative matters of the advisory committee or t[he] recei[pt of] administrative information from a Federal officer or agency."  41 C.F.R. § 102-3.160.  Such activities are explicitly "excluded from the procedural requirements contained in this subpart," *id.*, of the regulations implementing FACA.  That subpart addresses meeting procedures, minutes, and reports, 41 C.F.R. §§ 102.3-135, 102.3-165, open access and public participation requirements, 41 C.F.R. § 102.3-140, and the process for announcing advisory committee meetings to the public, 41 C.F.R. § 102.3-150.  In short, administrative and preparatory work are exempt from the very procedural requirements that plaintiffs claim have been violated.  *See* Opp'n at 8-9.

Moreover, as shown in the federal defendants' opening memorandum, the June 28 call was primarily focused on organizational maters.  *See* MTD at 23.  As part of that call, the members did discuss information requests, including the content of the June 28 letter sent by Vice Chair Kobach, which requested publicly available data from state voter rolls and sought feedback on how to improve election integrity.  *Id.*  These activities are precisely the type of administrative and preparatory activities explicitly exempt from FACA's public notice requirements.  *See* 41 C.F.R. § 102-3.160.  Plaintiffs do not actually argue otherwise, other than

to conclusorily assert that activities taken during that call were "not a mere 'research effort'" but were "an effort to amass and centralize a national voter database for undisclosed purposes." Opp'n at 10.   But the letter describes the purpose of the collection – to allow "the Commission to fully analyze vulnerabilities and issues related to voter registration and voting."  *See, e.g.*, Letter from Vice Chair Kobach to Hon. John Merrill, Sec. of State of Ala. (June 28, 2017), https://www.whitehouse.gov/sites/whitehouse.gov/files/docs/information-requests-to-states-06282017.pdf.  Any speculation that the publicly available information will be used beyond those research purposes is just that, speculation, and cannot form the basis for a claim.  *See Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712 (11th Cir. 2014) ("The plaintiffs cannot state a claim unless they 'raise a right to relief above the speculative level.'") (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In any event, as plaintiffs concede, the June 28 organizational call predated the filing of this complaint.  Plaintiffs nonetheless state that such a fact "is of no consequence."  Opp'n at 11. Such a claim ignores Supreme Court precedent.  As discussed in the federal defendants' opening memorandum, MTD at 9, the Supreme Court has made clear that past injury alone cannot justify declaratory or injunctive relief.  *Lyons*, 461 U.S. at 101-02.  Instead, plaintiffs seeking prospective relief – like plaintiffs here – must show that a potential future injury is "both real and immediate, not conjectural or hypothetical."  *Id.* at 102; *see also Clapper*, 568 U.S. at 401 (future injury must be "certainly impending").  Plaintiffs have made no attempt to make such a showing that calls or meetings like the June 28 call will reoccur in the same form; therefore, this Court lacks jurisdiction over this claim.

In their response, plaintiffs rely exclusively on the Eleventh Circuit's decision in *Alabama-Tombigbee Rivers Coalition v. Department of Interior*, 26 F.3d 1103, 1106-07 (11th

Cir. 1994), where the court concluded that injunctive relief could be available to remedy a FACA violation by an agency.  In that case, however, it was undisputed that the agency's failure to comply with FACA's specific requirements was ongoing.  *See Alabama-Tombigbee Rivers Coal. v. Fish & Wildlife Serv. of U.S. Dep't of Interior*, No. Civ. A. No. 93-AR-2322-S, 1993 WL 646410, at *2 (N.D. Ala. Dec. 22, 1993).  The Eleventh Circuit did not confront a case where the purported procedural injury was in the past, and so that case does not support circumventing the clear rules of *City of Los Angeles* and *Clapper* here.

### B.    Plaintiffs' Paperwork Reduction Act Claim Fails Because the Commission is Not an Agency.

Plaintiffs' Paperwork Reduction Act claim also fails because the Commission is not an "agency" subject to its requirements.  *See* MTD at 16, 18-20.  As set out in more detail in the federal defendants' opening memorandum, the Paperwork Reduction Act applies only to agencies as defined in 44 U.S.C. § 3502.  And as further discussed in the federal defendants' opening memorandum, that definition does not include entities, like the Commission, that "advise and assist the President" and that lack "substantial independent authority."  *See Soucie v. David*, 448 F.2d 1067, 1075 (D.C. Cir. 1971).  Plaintiffs make no attempt whatsoever to argue that the Commission has "substantial independent authority" or is otherwise an agency.  Opp'n at 20-22; *see also EPIC*, 2017 WL 3141907, at *11 (Commission is not an agency because it lacks "substantial independent authority").

Instead, plaintiffs merely cite the Paperwork Reduction Act's definition of agency and state that it includes "the Executive Office of the President."  Opp'n at 21.  But as explained in the federal defendants' opening memorandum, MTD at 15-16, the reference to "Executive Office of the President" does *not* encompass "[t]he President's immediate personal staff or units in the Executive Office whose sole function is to advise and assist the President."  *Kissinger v.*

*Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 156 (1980) (interpreting "agency" for purposes of the Freedom of Information Act ("FOIA")).  Moreover, because the Paperwork Reduction Act shares essentially the same definition as the FOIA, *compare* 5 U.S.C. § 552(f)(1), *with* 44 U.SC. § 3502(1), this Court should apply the same definition of "agency" to both statutes.  *See* MTD at 16; *see also Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006) ("[W]hen judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language indicates, as a general matter, the intent to incorporate its judicial interpretations as well.").  Plaintiffs offer no response whatsoever to this argument.  Accordingly, their claims that the Commission failed to comply with the Paperwork Reduction Act's requirements ignore the threshold issue:  the Commission, a non-agency, was never required to comply in the first place.  *See* Opp'n at 21-22.  Plaintiffs' Paperwork Reduction Act claim should therefore be dismissed for failure to state a claim.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM THAT THE COMMISSION HAS EXCEEDED ITS AUTHORITY UNDER THE EXECUTIVE ORDER.

Plaintiffs' claim that the Commission has exceeded its authority under Executive Order No. 13,799 should be dismissed.  *See* MTD at 29-32.  Plaintiffs spend only two substantive sentences responding to the federal defendants' arguments, stating that "[t]he Order does not command the Commission to amass and centralize a national voter database.  Interestingly, not even its own Charter mentions it."  Opp'n at 23.  But, as discussed in the federal defendants' memorandum, plaintiffs are reading the Executive Order too narrowly, and the Commission's actions too broadly.  MTD at 31.  The Executive Order specifically tasks the Commission with studying registration and voter processes, and the request for publicly available information reasonably falls within this directive.  *Id.*  Nor, of course, do plaintiffs identify a provision of the Executive Order that would prohibit such study.  *See id.*; Opp'n at 23.

19

In any event, this Court need not reach the merits of this issue, because the Executive Order does not provide a private right of action for private individuals to enforce its provision. *See* MTD at 30 (collecting cases).  Plaintiffs make no attempt to rebut this argument, or to otherwise show that they have a cause of action to bring a claim alleging a violation of the Executive Order.  Opp'n at 23.  This claim should therefore be dismissed.

## V.   PLAINTIFFS FAIL TO STATE A CLAIM THAT THE COMMISSION HAS VIOLATED ARTICLE II OF THE UNITED STATES CONSTITUTION.

Plaintiffs fail to support their extraordinary claim that a Presidential Advisory Commission's request for the voluntary submission of publicly available information violates Article II of the United States Constitution.  *See* Opp'n at 17-20.  Accordingly, plaintiffs' Article II claim should be dismissed.

Plaintiffs first claim generally that the President is without authority to voluntarily collect public information.  Opp'n at 18.  But, as stated in the federal defendants' opening memorandum, the President has broad power to collect information and make recommendations. FACA itself provides authority for the President to establish an advisory committees.  5 U.S.C. app 2 § 2(B), (4).  Moreover, the Constitution itself *explicitly* confers upon the President the power to recommend legislation to Congress, something that often requires prior research and study.  *See* U.S. Const. art II, § 3, cl.2 (hereinafter "The Recommendations Clause") ("He shall . . . recommend to [Congress's] Consideration such Measures as he shall judge necessary and expedient."); *Youngstown Sheet & Tube Co.*, 343 U.S. at 587 ("The Constitution limits [the President's functions in the lawmaking process to the recommending of laws he thinks wise and the vetoing of laws he thinks bad.").  And, accordingly, Article II has been interpreted to implicitly grant the President the power to acquire information.  *See Freedom Watch*, 807 F. Supp. 2d at 36 ("While no clause of Article II expressly grants the President the power to acquire

information or receive advice in confidence, the necessity of receiving confidential advice appears to flow from Article II.") (quoting *Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d at 50); *see also Judicial Watch*, 219 F. Supp. 2d at 50 & n.15 ("Several clauses of Article II reflect an understating that the President will have access to information and the power to acquire it.").[3]  Plaintiffs, then, would have this Court hold that despite this Presidential power to gather information, a Presidential advisory committee's attempt to gather *public* information violates the Constitution.  Far from respecting Article II, such a conclusion would run counter to the broad powers that the President has to gather information in support of his duties.

Plaintiffs next argue that "the Constitution gives Congress exclusive power over the vote and election system," and that the President lacks such power over these systems.  Opp'n at 18.  But, as discussed above and in the federal defendants' opening memorandum, MTD at 33-35, the President has created an advisory committee pursuant to his statutory powers under FACA and his constitutional powers to recommend legislation and gather information under Article II.  Plaintiffs have not alleged that either the President or the Commission has actually taken any enforcement actions, and any speculation to that effect is insufficient to state a claim.  *See* Opp'n

---

[3] *See also Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Grp.*, 219 F. Supp. 2d at 50 & n.15 ("For example, Article II, Section 2, grants the President the power to 'require the Opinion in writing, of the principal Officer in each of the executive Departments, upon any subject relating to the Duties of their respective Offices.'  In addition, the State of the Union clause, requiring the President 'from time to time give to the Congress Information of the State of the Union' presupposes superior or at least different access to information than the legislative branch.  U.S. Const. art. II, § 3, cl. 1.  The Recommendations Clause, invoked by the government in this case, which empowers the President to 'recommend to [Congress] such Measures as he shall judge necessary and expedient,' similarly presupposes the ability to collect information and advice necessary to make such recommendations.  *Id.* at § 3, cl. 2. And as the Constitution did not presume the President to operate in a vacuum, the other powers listed in Article II, generally presuppose the President's ability to receive advice in order to exercise those powers in an informed manner.").

at 19-20; *see also Simpson*, 744 F.3d at 712 ("[A]fter *Twombly* and *Iqbal*, this speculation does not state a claim.").  Indeed, all plaintiffs have actually alleged is that the Commission has requested the voluntary submission of public information, which they characterize as intending to "amass and centralize a federal database."  Opp'n at 18-19.  Such activities, even by plaintiffs' own characterization, do not constitute enforcement activities in violation of Article II.

Finally, plaintiffs cite generally to Justice Jackson's concurrence in *Youngstown*, 343 U.S. 579, to support their position.  Opp'n at 19-20.  But in doing so, they misconstrue the teachings of that decision.  That case involved President Truman's decision to "take possession of and operate most of the Nation's steel mills," something that the Court held he lacked the statutory or constitutional authority to do.  *Youngstown*, 343 U.S. at 582.  In the concurrence the case has become known for, Justice Jackson discussed a three-part taxonomy for how the President's powers are to be interpreted based on what actions Congress has taken vis-à-vis his authority.  *Id.* at 636-39 (Jackson, J., concurring in the judgment).  There are three categories: when the President acts pursuant to authorization from Congress, where he acts in the absence of that authority, and where he acts contrary to Congressional authority.  *Id.*  Plaintiffs point to Justice Jackson's third category, stating that "[w]hen the President takes measures incompatible with the expressed or implied will of Congress, his power is at its lowest ebb, for then he can rely only upon his own constitutional powers minus any constitutional powers of Congress over the matter."  *Id.* at 637.  But to state this taxonomy in the context of *Youngstown* illustrates the inapplicability of this decision to the present case.

For starters, *Youngstown* involved specific, affirmative executive action that directly affected individuals – President Truman seized steel mills without any congressional authorization.  Here, by contrast, the President has commissioned an advisory committee to

create a recommendatory report, and in support of its mandate, that committee has begun

gathering public information. This research activity is authorized, both by Congress through

FACA, and by the Constitution. *See, e.g.*, *Nat'l Anti-Hunger Coal v. Exec. Comm. of President's*

*Private Sector Survey on Cost Control*, 557 F. Supp. 524, 529 (D.D.C. 1983), *aff'd*, 711 F.2d

1071 (D.C. Cir. 1983) (FACA committees "must gather information, explore options with

agencies to get comments and reactions, and evaluate alternatives"); Recommendations Clause.

In other words, to the extent that *Youngstown* is even applicable in this context, the

Commission's data collection activities are comfortably within both constitutional and statutory

limits. Nor do plaintiffs allege that what the Commission has actually done – collect public data

– violates a specific Congressional enactment. *See* Opp'n at 19-20. For these reasons, and those

stated in federal defendants' opening memorandum, the Commission has acted in accord with

Article II, and plaintiffs' claim to the contrary should be rejected.[4]

---

[4] The remaining count in plaintiffs' complaint, Count V, while nominally addressed against both the state defendant and the "Presidential Advisory Commission," asserts only that the state defendant has violated the public records provision of the state voter registration act, Fl. Stat. § 97.0585. This statute does not, by its terms, apply to the federal government. *City of Miami v. Metro. Dade Cty.*, 745 F. Supp. 683, 687 (S.D. Fla. 1990) ("Under the definitional section of the statute [the Florida Public Records Act, also applicable to § 97.0585], this Court finds that the term 'agency' does not contemplate governmental entities other than those created or established pursuant to Florida law. Clearly, the [U.S. Attorney's Office] is not a governmental entity created or established pursuant to Florida law."). To the extent, however, that plaintiffs intend that this Count be read as lying against the Commission, plaintiffs have failed to raise this Count in their opposition to dismissal, and therefore any arguments that this claim should survive dismissal of the federal defendants have been waived. *See also* Pls.' Response Fla. Sec. of State Mot. Dismiss, ECF No. 43, at 11 (arguing that the Court has supplemental jurisdiction over plaintiffs' claim against the state defendant because "Plaintiffs raise numerous claims [against federal defendants] under the U.S. Constitution and federal statutes.").

## CONCLUSION

For the aforementioned reasons, and those set out in the federal defendants' opening

brief, plaintiffs' complaint should be dismissed.

Dated:  December 1, 2017                    Respectfully submitted,

                                            CHAD A. READLER
                                            Principal Deputy Assistant Attorney General

                                            ELIZABETH J. SHAPIRO
                                            Deputy Director

                                             _s/ Kristina A. Wolfe_
                                            CAROL FEDERIGHI
                                            Senior Trial Counsel
                                            KRISTINA A. WOLFE (Fla. No. A5502351)
                                            JOSEPH E. BORSON
                                            Trial Attorneys
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            20 Massachusetts Avenue, N.W.
                                            Washington, D.C. 20530
                                            Tel: (202) 353-4519 / Fax: (202) 616-8460
                                            E-mail: kristina.wolfe@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2017, I electronically filed the foregoing paper with

the Clerk of the Court using the ECF system, which shall send notice to all counsel of record.

*/s/ Kristina A. Wolfe*
KRISTINA A. WOLFE