# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-22568-CIV-COOKE/GOODMAN

**ARTHENIA JOYNER; MIKE SUAREZ; JOSHUA A. SIMMONS; BRENDA SHAPIRO; LUIS MEURICE; THE AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC.; FLORIDA IMMIGRANT COALITION, INC.,**

    **Plaintiffs,**

**vs.**

**PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; MICHAEL PENCE,** in his official capacity as Chair of the Presidential Advisory Commission on Election Integrity**; KRIS KOBACH,** in his official capacity as Vice Chair of the Presidential Advisory Commission on Election Integrity; **EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES; EXECUTIVE OFFICE OF THE VICE PRESIDENT OF THE UNITED STATES; TIM HORNE,** in his official capacity as Administrator of the General Services Administration; **MICK MULVANEY,** in his official capacity as Director, Office of Management and Budget; **KEN DETZNER,** in his official capacity as Florida Secretary of State,

    **Defendants.**

_____/

# PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND/OR OTHER EMERGENCY INJUNCTIVE RELIEF AS MAY BE APPROPRIATE

Plaintiffs, pursuant to Fed. R. Civ. P. 7 and 65, seek an emergency temporary restraining order and/or a preliminary injunctive and/or other appropriate injunctive relief prohibiting Defendants from misappropriating, disseminating, selling, assigning, conveying, transferring, hypothecating, or utilizing, in any way, any private voter data or any other information collected or otherwise obtained by the Presidential Advisory Commission on Election Integrity (the "Commission"), and ordering the Florida Secretary of State to remain bound by this Court's July 20, 2017 Order [ECF No. 31] and to continue to comport with all protections governed by Florida law, pending further order of Court.

New, disturbing developments have arisen, requiring emergency Court intervention. On January 3, 2018, the President executed an Executive Order, terminating the Commission. Within hours, Kansas Secretary of State Kris Kobach, the Commission's Vice Chair and notorious vote suppressor, gave statements to the media that he and the White House are working together to transfer private, protected voter data to Immigration and Customs Enforcement ("ICE") so that Secretary Kobach, the White House, and ICE can work together to purge voter rolls. Secretary Kobach called this a "tactical shift, " saying "[t]he investigations will continue now, but they won't be able to stall [it] through litigation." Using Commission data, the Federal Defendants seek to "Stop Aliens From Voting," without complying with FACA and other laws.

Injunctive relief is appropriate to compel government compliance with FACA. "[T]o allow the government to use the product of a tainted procedure would circumvent the very policy that serves as the foundation of the Act." *Ala.-Tombigbee Rivers Coal. v. Dep't of Interior*, 26 F.3d 1103, 1107 (11th Cir. 1994).

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

1.      Throughout the 2016 presidential election campaign, now-President Trump

spread numerous baseless conspiracy theories about voter fraud. Details are provided in greater detail in Plaintiffs' initial Complaint [ECF No. 1] and First Amended Complaint [ECF No. 65].

2.      One of President Trump's biggest campaign surrogates during the 2016 election was Kansas Secretary of State Kris Kobach. Secretary Kobach has a long history of suppressing the fundamental right to vote. *See League of Women Voters v. Newby*, 838 F.3d 1, 13 (D.C. Cir. 2016) (reversing denial of motion for preliminary injunction, noting  "precious little record evidence" of Kobach's assertions of fraudulent voter registration by non-citizens); *Fish v. Kobach*, 840 F.3d 710, 747, 755 (10th Cir. 2016) (Kobach's disenfranchisement of voters is a "mass denial of a fundamental constitutional right;" his "assertion that the 'number of aliens on the voter rolls is likely to be in the hundreds, if not thousands' is pure speculation").

3.      Within one day of President Trump's election, Secretary Kobach drafted "amendments to the NVRA [National Voter Registration Act] to make clear that proof of citizenship requirements are permitted." (**Exhibit "A,"** November 9, 2016 Email from Kris Kobach to Gene Hamilton). He informed Gene Hamilton, who became one of the Trump Administration's top immigration policy staff members at the Department of Homeland Security ("DHS") after the President took office.

4.      While much of what Secretary Kobach was referring to as his proposed edits to the NVRA in November 2016 is unavailable to the public, a small portion was unsealed in *Fish v. Kobach*, Case No. 16-cv-02105 (D. Kan.), which addresses Secretary Kobach's extensive efforts to suppress the right to vote in Kansas. The unredacted portion of Secretary Kobach's draft amendments to the NVRA makes it clear that Secretary Kobach would expressly allow states to require documentary proof of citizenship of voter registration applicants, and also that he wanted to permit states to "require any information" from voter registration applicants.

(**Exhibit "B,"** Document titled "Amendments to the National Voter Registration Act").

5.     Shortly after President Trump's election, Secretary Kobach also created for DHS, a "KOBACH STRATEGIC PLAN FOR FIRST 365 DAYS" (the "Strategic Plan"), filed in *Fish v. Kobach*. Of the 23 items on the Strategic Plan, only the last item is unredacted. It states: "V. Stop Aliens From Voting: . . . 23. Draft Amendments to the National Voter Registration Act to promote proof-of-citizenship requirements." (**Exhibit "C"**). (emphasis in original).

6.     On January 25, 2017, the President tweeted his intention to create what would later become the Presidential Advisory Commission on Election Integrity ("Commission"): "I will be asking for a major investigation into VOTER FRAUD, including those registered to vote in two states, those who are illegal and....[1] even, those registered to vote who are dead (and many for a long time). Depending on results, we will strengthen up voting procedures!"[2]

7.     The primary reason for the creation of the Commission was the President's baseless argument that "[i]n addition to winning the Electoral College in a landslide, I won the popular vote if you deduct the millions of people who voted illegally."[3] ABC News declared this statement "False," because there is "no proof to back up this claim."[4] This statement was in addition to others made by or on behalf of the President that made it clear that this Administration wants to suppress the right to vote based upon unfounded, spurious accusations of voter fraud. A non-exhaustive compilation of statements by or on behalf of the President

---

[1]  *See* **Composite Exhibit "S,"** *see also* Donald J. Trump (@realDonaldTrump), Twitter (Jan. 25, 2017, 7:10 am), https://twitter.com/realDonaldTrump/status/824227782490309 0176.

[2]  *See* **Composite Exhibit "S,"** *see also* Donald J. Trump (@realDonaldTrump), Twitter (Jan. 25, 2017, 7:13 am), https://twitter.com/realDonaldTrump/status/824228768227217408.

[3]  *See* **Composite Exhibit "S,"** *see also* Donald J. Trump (@realDonaldTrump), Twitter (Nov. 27, 2016, 3:30 p.m.), *https://twitter.com/realDonaldTrump/status/802972944532209664*.

[4]  Lauren Pearle, *Fact-Checking Trump's Claims About 'Serious Voter Fraud,'* ABC News (Nov. 28, 2016), http://abcnews.go.com/Politics/fact-checking-trumps-claims-voter-fraud/story?id=43820475.

concerning voter fraud in the 2016 election is filed in the record at ECF No. 65-1, pp. 5-13.

8. Secretary Kobach falsely stated after the 2016 election, "I think the president-elect is absolutely correct when he says the number of illegal votes cast exceeds the popular vote margin[.]" Mr. Kobach "had no tangible evidence to support that statement."[5]

9. Presidential Counselor Kellyanne Conway said the President "bases his information" about voter fraud on Secretary Kobach.[6]

10. On May 11, 2017, the President executed Executive Order 13799, 82 Fed. Reg. at 22,389 ("Executive Order 1") (**Exhibit "D"**), leading to the Commission's creation. Vice President Michael Pence was named Chair. Secretary Kobach – the President's ally and chosen agent to work to suppress the right to vote – was named the Vice Chair. A Charter for the Commission was subsequently also prepared. (**Exhibit "E"**).

11. Executive Order 1 instructs the Commission to "study the registration and voting processes used in Federal elections." Executive Order 1 does not contain any authority to collect personal voter data, to initiate investigations, or to seek the disclosure of state voter data.

12. Yet, on June 28, 2017, before the Commission's members were all appointed and sworn in and before any noticed meetings, Secretary Kobach stated during a telephonic meeting, led by the Vice President, that "a letter w[ould] be sent today to the 50 States and District of Columbia on behalf of the Commission requesting publicly-available data from state voter rolls. . . ." ("Request Letters"). (**Exhibit "F"**).

13. Maine Secretary of State, and Commission member, Matthew Dunlap, stated:

---

[5] Bryan Lowry, *Kobach backs Trump's unsupported claim of millions illegally voting*, The Wichita Eagle (Nov. 30, 2016), http://www.kansas.com/news/politics-government/election/article117933098.html.

[6] Andrew Kaczynski, *Vice chair of 'Election Integrity' group repeatedly backed Trump's unfounded claim that millions voted illegally*, CNN.com (May 12, 2017), http://www.cnn.com/2017/05/12/politics/kfile-kobach-voter-fraud-claim/index.html.

> On that call, Vice-Chair Kobach informed the other commissioners and me that the Commission planned to send letters to all 50 states and the District of Columbia asking that they provide the Commission with information from the states' voter rolls. I was not given the requests in advance of this phone call; this phone call was the first time I had heard of these letters. The commissioners were not given the opportunity to vote on whether to send the letters, which were sent later the same day. I did not have time to review the letters, to consult with other commissioners regarding the letters, or to consider or object to the letters. If I had been given a meaningful opportunity to discuss this matter, I might have opposed the decision to send these letters, or proposed alternative strategies for gathering voting-related information.

(**Exhibit "G,"** November 16, 2017 Decl. of Matthew Dunlap at ¶ 5).

14.    All the Request Letters, including the one to Florida Secretary of State Ken Detzner, (**Exhibit "H"**), request voter identifying information, including the:

> full first and last names of all registrants, middle names or initials if available, addresses, dates of birth, political party (if recorded in your state), last four digits of social security number if available, voter history (elections voted in) from 2006 onward, active/inactive status, cancelled status, information regarding any felony convictions, information regarding voter registration in another state, information regarding military status, and overseas citizen information.

15.    The Request Letters also seek "[w]hat evidence or information [the state had] regarding instances of voter fraud or registration fraud" and "[w]hat convictions for election related crimes ha[d] occurred in [the] state since the November 2000 federal election." According to the Commission, "any documents that are submitted to the full Commission w[ould] also be made available to the public." The states' responses to the Commission were stated to be due by July 14, 201, before any public meeting of the Commission was ever held. *Id.*

16.    The Request Letters did not list the Commission's physical address. The URL (https://safe.amrdec.army.mil/safe/Welcome.aspx) to transfer voter information was not secure. (**Exhibit "I,"** Screenshot of website, dated 7/10/17). Visitors to the URL were told the "connection is not secure" and were warned of "your information . . . being stolen." *Id.*

17.    The Commission's requests for voter data violated federal law in numerous

regards, including, among other things, the Federal Advisory Committee Act ("FACA") (5 U.S.C. app.), E-Government Act of 2002 (44 U.S.C. § 3501 note), the Paperwork Reduction Act ("PRA") (44 U.S.C. § 3501), and the U.S. Constitution. Additionally, the Request Letter sent to Florida Secretary of State Ken Detzner sought protected information about Florida voters in violation of Fla. Stat. § 97.0585 and Florida's Right to Privacy.

18.     The instant lawsuit was filed on July 10, 2017. The Defendants' violations are more fully set out in the Complaint [ECF No. 1] and the First Amended Complaint [ECF No. 65].[7] Plaintiffs also previously sought a motion for temporary restraining order. [ECF No. 6].

19.     On July 18, 2017, the Court held a hearing in this matter. At the same time, the court in *Lawyers' Committee for Civil Rights Under Law v. Presidential Advisory Comm'n on Election Integrity*, 265 F. Supp. 3d 54 (D.D.C. 2017) ("*Lawyers' Committee*"), denied preliminary injunctive relief, without prejudice, in another case against the Commission.

20.     Deferring to the *Lawyers' Committee* court's ruling at that time, this Court denied Plaintiffs' motion for a temporary restraining order without prejudice. *Joyner v. Presidential Advisory Comm'n on Election Integrity*, 17-22568-CIV, 2017 WL 3113486, at *1 (S.D. Fla. July 20, 2017); *see also* ECF No. 31. However, the Court required the Florida Secretary of State to limit Florida's response to the Commission to the information allowed by Florida law. *Id.*

21.     Subsequent to this Court's ruling, the Florida Secretary of State provided certain voter data and information to the Commission. According to news reports, numerous other states have also provided voter data and information to the Commission.

22.     After extensive negative publicity surrounding the Commission's requests, the Commission announced in July 2017 that it "no longer intend[ed] to use the DOD SAFE system

---

[7] The Complaint and First Amended Complaint and their respective exhibits are incorporated by reference.

[the website referenced in the Request Letters] to receive information from the states, and instead intends to use alternative means to receiving the information requested in the June 28, 2017, letter." (**Exhibit "J,"** July 10, 2017 Decl. of Kris W. Kobach). According to Secretary Kobach at that time, "the Director of White House Information Technology is repurposing an existing system that regularly accepts personally identifiable information through a secure, encrypted computer application within the White House Information Technology enterprise." *Id.*

23.    According to Andrew J. Kossack, the Commission's Executive Director and Designated Federal Officer, the Commission decided whether to make documents public. One category of documents not made public was the individualized state voter data the Commission had collected (presumably including Florida's). To wit, Mr. Kossack has stated that:

> The state voting registration data has not been provided to the Commission members, but states submitted their data to the Commission as an entity and the data is intended to inform the Commission's work as an advisory body. In my judgment it is therefore subject to section 10(b) [of the Federal Advisory Committee Act, requiring public disclosure]. The data will not be made public, however, because it is exempt from disclosure under 5 U.S.C. § 552(b)(6) to protect personal privacy.

(**Exhibit "K,"** September 29, 2017 Third Decl. of Andrew J. Kossack at ¶ 11).

24.    In November 2017, Secretary Dunlap, a Commission member, sued the Commission for violating FACA because, among other things, the Commission refused to give him access to documents or involve him in Commission activities in any meaningful way. (November 16, 2017 Decl. of Matthew Dunlap). On December 22, 2017, a preliminary injunction was entered, ordering the Commission to give Secretary Dunlap access to numerous categories of documents. (**Exhibit "L"**).[8]

25.    On January 3, 2017, the DOJ provided notice that the President executed a new

---

[8]    Memorandum Op. in *Dunlap v. Presidential Advisory Commission on Election Integrity*, Case No. 17-2361 (CKK) at Docket Entry 33 (D.D.C. Dec. 22, 2017)).

Executive Order that same day ("Executive Order 2"). Executive Order 2 revoked Executive Order 1. [ECF No. 68]. The DOJ explained that Executive Order 2 terminated the Commission.

26.     Contemporaneous with the signing of Executive Order 2, the White House released a press release, stating:

> Despite substantial evidence of voter fraud, many states have refused to provide the Presidential Advisory Commission on Election Integrity with basic information relevant to its inquiry. Rather than engage in endless legal battles at taxpayer expense, today President Donald J. Trump signed an executive order to dissolve the Commission, and he has asked the Department of Homeland Security to review its initial findings and determine next courses of action.

(**Exhibit "M"**).[9]

27.     The White House's press release undermines all of the Administration's statements that the Commission was bipartisan and not pretextual, and only confirms that the President formed the Commission with the intention of suppressing the right to vote based upon unfounded, spurious accusations of voter fraud.

28.     Even more troublesome, within hours of the President signing Executive Order 2, news reports indicated Secretary Kobach would continue to run the White House's investigation into "voter fraud" along with DHS Immigration and Customs Enforcement ("ICE").

29.     On January 3, 2018, Secretary Kobach told Breitbart News, "What's happening is a tactical shift where the mission of the commission is being handed off to Homeland Security without the stonewalling by Democrats." (**Exhibit "N"**)[10]

30.     Secretary Kobach made clear he would continue to work on the investigation into

---

[9] *Statement by the Press Secretary on the Presidential Advisory Commission on Election Integrity*, (Jan. 3, 2018); *see also* https://www.whitehouse.gov/briefings-statements/statement-press-secretary-presidential-advisory-commission-election-integrity/.

[10] John Binder, *Exclusive–Kris Kobach: Voter Fraud Commission 'Being Handed Off' to DHS, Will No Longer Be 'Stonewalled' by Dems*, (Jan. 3, 2018), *http://www.breitbart.com/big-government/2018/01/03/exclusive-kris-kobach-voter-fraud-commission-being-handed-off-to-dhs-will-no-longer-be-stonewalled-by-dems/*.

"voter fraud" with the White House and DHS, specifically to evade pending litigation:

> ***"I'll be working closely with the White House and DHS to ensure the investigations continue," Kobach continued.***
>
> *   *   *
>
> ***"The investigations will continue now, but they won't be able to stall if through litigation," Kobach told Breitbart News.***
>
> ***"The investigation will continue. And it will continue more efficiently and more effectively," Kobach said. "By throwing their food in the air, they just lost their seat at the table."***

*Id.* (emphasis added).

31.     "Kobach said he intends to work closely with DHS and the White House, and expects the bulk of the DHS investigation to be done by midsummer." (**Exhibit "O"**).[11]

32.     Also on January 3, 2018, news reports indicated that the state voter data would be turned over to ICE, where that agency would "take over the commission's work and begin efforts to match state voter rolls to federal databases of noncitizens":

> ***The Kansas official said he expects officials from Immigration and Customs Enforcement and political appointees overseeing that agency to take over the commission's work and begin efforts to match state voter rolls to federal databases of noncitizens***. He insisted he was not disappointed with the president's decision.
>
>  "It's the right move," Kobach said. "It's a shifting in tactics from having the investigation be done by a federal commission to having it be done by a federal agency. The agency has a greater ability to move quickly to get the investigation done."

**(Exhibit "P"**).[12] (emphasis added).

33.     That same night, Secretary Dunlap "said Kobach and his allies 'were the ones that were stonewalling,' saying they had ***'very definite ideas of what they wanted this commission to***

---

[11]   Colvin & Hanna, *Trump Signs Order Disbanding Voter Fraud Commission*, Associated Press, (Jan. 3, 2018), *https://www.usnews.com/news/politics/articles/2018-01-03/trump-signs-order-disbanding-voter-fraud-commission*.

[12]   Gerstein & Nusbaum, *Trump disbands voter fraud commission: Kobach says Homeland Security immigration officials will take over probe*, POLITICO (Jan. 3, 2018), *https://www.politico.com/story/2018/01/03/trump-disbands-voter-fraud-commission-322621*.

come up with.'" **Secretary Dunlap also "questioned if the plan all along was for the commission to be disbanded**. 'They're going to abandon the public process and they're going to do it behind the scenes." "'Much more efficiently means no more public input.'" Colvin & Hanna, *supra* (emphasis added). Secretary Dunlap also said the "White House's decision to move the inquiry to the Department of Homeland Security was **'utterly alarming'**" and that "[a]ny chance of having this investigation done in a public forum is now lost, and I think people should be, frankly, *frightened* by that." (**Exhibit "Q"**)[13] (emphasis added).

34.     All but confirming that Secretary Dunlap was correct, early in the morning on January 4, 2018, the President tweeted, making it clear that the Commission, which he called the "Commission On Voter Fraud," was always pretextual. The Commission's purpose was always to "find" that steps must be taken to restrict voting rights, based upon purported "voter fraud":

> Many mostly Democrat States refused to hand over data from the 2016 Election to the Commission On Voter Fraud. They fought hard that the Commission not see their records or methods because they know that many people are voting illegally. System is rigged, must go to Voter I.D.[14]
> As Americans, you need identification, sometimes in a very strong and accurate form, for almost everything you do.....except when it comes to the most important thing, VOTING for the people that run your country. Push hard for Voter Identification![15]

35.     On January 4, 2018, the White House Press Secretary said "we are going to send the preliminary findings from the Commission to the Department of Homeland Security and make determinations on the best way forward from that point" because "that was the agency best determined by the Administration and we are moving forward in letting them take over the

---

[13] Tackett & Wines, *Trump Disbands Commission on Voter Fraud*, N.Y. Times (Jan. 3, 2018), *https://www.nytimes.com/2018/01/03/us/politics/trump-voter-fraud-commission.html.*
[14] *See* **Composite Exhibit "S,"** *see also* Donald J. Trump (@realDonaldTrump), Twitter (Jan. 4, 2018, 3:02 am), https://twitter.com/realDonaldTrump/status/948872192284155904.
[15] *See* **Composite Exhibit "S,"** *see also* Donald J. Trump (@realDonaldTrump), Twitter (Jan. 4, 2018, 3:11 am), https://twitter.com/realDonaldTrump/status/948874586006925313.

process." The White House, *Press Briefing with Press Secretary Sarah Sanders*, YouTube (Jan. 4, 2018), https://youtu.be/mHDHfUhEkrw?t=5127, beginning at 1:25:27.

36.     Almost immediately after the 2016 election, Secretary Kobach was communicating with immigration officials about revisions to the NVRA to "promote proof-of-citizenship requirements" in order to "Stop Aliens From Voting." This was part of Secretary Kobach's "KOBACH STRATEGIC PLAN FOR FIRST 365 DAYS" of the Trump Administration's DHS. Now, almost 365 days into the President's term, Secretary Kobach, the White House and DHS, will be taking over the Commission's work and "begin efforts to match state voter rolls to federal databases of noncitizens." This is a scheme.

37.     Stated another way, the evidence is already overwhelming that the  President and Secretary Kobach, among others, have enacted a scheme to (a) collect protected, private voter data under the ruse of a FACA commission, (b) hide pertinent information about the Commission's activities to the public and even the Commission's own members, (c) store private voter data on White House computers, which was wrongfully obtained under the pretext of a bipartisan FACA commission, (d) terminate the Commission, and (e) turn the private voter data over to ICE and Secretary Kobach, so they can, at a minimum, "Stop Aliens From Voting."

38.     The danger to Americans, in Florida and elsewhere, is immense and imminent. The public has no idea the scope of the information being kept by the Federal Defendants and what is being done with it. It is abundantly clear that the Federal Defendants, apparently led by the Executive Office of the President, Secretary Kobach and their cohorts, plan to disseminate the state voter data for their own ends as they please, and may have even done so already.

39.     It is January 2018. If Secretary Kobach "expects the bulk of the DHS investigation to be done by midsummer," that leaves just a few months for the investigation to

conclude. The only conclusion to be drawn is that the Federal Defendants have either already utilized the state voter data for means not authorized by FACA, the PRA, or any other authority governing the Commission; or will be doing so very, very soon.[16]

## II. ARGUMENT

40.     The United States Supreme Court has explained, in *U.S. Department of Defense v. Federal Labor Relations Authority*, 510 U.S. 487, 500 (1994) that "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form."

41.     Fed. R. Civ. P. 65 provides for TROs and preliminary injunctions. The movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).

### A.    Plaintiffs Are Likely to Succeed on the Merits.

42.     The showing of a substantial likelihood of success on the merits is generally the most important prerequisite to obtaining temporary injunctive relief and only requires a showing of *likely* or probable, rather than *certain,* success. *Schiavo*, 403 F.3d at 1232. A movant must

---

[16] The Federal Defendants' counsel, citing a July 17, 2017 Declaration of Charles C. Herndon, the Director of White House Information Technology, stated that "no other entity or persons beyond a limited number of [Director Herndon's] technical staff have access" to the "data submitted by the States," and that "the data will not be transferred or utilized; thus, there is no basis for emergency injunctive relief." However, the White House's and Secretary Kobach's actions and statements are in direct conflict with those representations. Mr. Herndon's July 17, 2017 Declaration (**Exhibit "U"**) explicitly states that "[a]uthorized members of the Commission will be given access to the file directory identified to house the uploaded information," and that "[t]he Commission will receive dedicated laptops, which can access the data provided by states . . . ." Therefore, Secretary Kobach and others have been able to access the data. Finally, Mr. Herndon's Declaration is 6 months old, and was executed well before this week's events.

only show a substantial likelihood of success on one of its claims to obtain relief. *See id.* "Absent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction" as it is inappropriate "to allow the government to use the product of a tainted procedure." *Tombigbee*, 26 F.3d at 1107 .

43.     Plaintiffs and the public will be harmed. Plaintiffs oppose the dissemination, collection, and potential distribution of their voter and identity information, and they are concerned about the potential distribution of their voting history and personal voter information, and the potential for misuse of that information. (**Exhibit "R,"** Affidavits, also at ECF No. 6-10).

### 1. Federal Advisory Committee Act

44.     The Commission was created under FACA, and now its data is being misappropriated to suppress the right to vote. Although Executive Order 2 purports to "terminate" the Commission, the Commission still possesses incredible amounts of public, private voter data amounting to an unlawful federal, centralized voter database. The Defendants, Commission members, and others should not be permitted to utilize the data and information as they wish, which in this case is to "Stop Aliens From Voting."

45.     The Defendants' conduct here is even more brazen than that of another FACA committee previously enjoined in this circuit, in *Alabama-Tombigbee Rivers Coalition v. Department of Interior*, 26 F.3d 1103 (11th Cir. 1994) ("*Tombigbee*"). There, the Alabama-Tombigbee Rivers Coalition (an organization comprised of local businesses and organizations in Alabama and Mississippi), challenged the release, use of, or reliance upon a scientific committee report prepared by a panel governed by FACA within the Fish and Wildlife Service ("FWS"). *Id.* at 1104. The FWS panel's report was prepared as support for the Department of the Interior's listing of the Alabama Sturgeon as an endangered species under the Endangered Species Act. *Id.*

46.     However, *Tombigbee* explains, concerns had been raised "regarding the objectivity of the panel." *Id.* The panel members were originally tasked with issuing individual reports, but "shortly before the 'panel' was to convene to relay their individual reports, FWS substantially changed the structure of the 'panel.' The modified structure was for the scientists to meet and compile a single collective report. *Id.* at 1105. The Coalition filed suit and sought a TRO, preliminary and permanent injunction "against the release, use of, and reliance upon the scientific committee report." *Id.* That same day, "FWS expeditiously announced in a press release that the scientists' summary findings supported the listing of the Alabama Sturgeon as an endangered species." *Id.* As explained in *Tombigbee*, *id.* at 1106:

> The Federal Advisory Committee Act requires, *inter alia:* (1) a written charter that explains the "mission" of the committee; (2) timely notice of committee meetings in the Federal Register; (3) fair and balanced composition of the committee; (4) government submission of a plan to the committee to ensure that the same is not "inappropriately influenced" by the appointing authority; (5) that the committee meetings be open to the public; (6) that the government prepare and provide detailed minutes of the committee meetings; (7) that the information upon which the committee relies in its determination be made available for public inspection. *See* 5 U.S.C. App. § 5 *et seq.*

47.     "As a result of FWS' FACA violations, the district court permanently enjoined the defendants from 'publishing, employing and relying upon the Advisory Committee report which is the primary subject of the above entitled cause, for any purpose whatsoever, directly or indirectly, in the process of determining whether or not to list the Alabama sturgeon as an endangered species.'" *Id.* at 1105. On appeal, the court held that injunctions are an available remedy under FACA, and that an injunction prohibiting the use of an advisory committee report was appropriately granted where the committee process did not comply with FACA. *Id.*

48.     "***[T]o allow the government to use the product of a tainted procedure would circumvent the very policy that serves as the foundation of the Act.***" *Id.* at 1106 (emphasis

added). "FACA's dictates emphasize the importance of openness and debate. . . . If public commentary is limited to retrospective scrutiny, the Act is rendered meaningless." *Id.*

49.     According to the Eleventh Circuit, "injunctive relief [is] the only vehicle that carries the sufficient remedial effect to ensure future compliance with FACA's clear requirements," even where there are "minor transgressions," "the subject matter is serious," and "the objective is worthy." "Because the matters are so serious and of such great concern to so many with differing interests, it is absolutely necessary that the procedures established by Congress be followed to the letter." *Id.* at 1107 & n.9.

50.     In this case, the Federal Defendants have conducted extensive business in violation of FACA, including but not limited to obtaining personal, private data about voters in Florida and across the country without even conferring with the Commission's members, much less the public; and then storing it at the White House, to be distributed by Secretary Kobach, the White House, ICE, and maybe others, with no public discussion or approval. Even assuming, for the sake of argument, that the Presidential Advisory Commission on Election Integrity were ever a legitimate and bipartisan commission (which it never was), there was certainly no provision in the law allowing the data it collected to be hidden from public and then disseminated to others within and not within the federal government for their own means.

51.     Just like in *Tombigbee*, the Defendants are wrongfully utilizing the Commission's data at this time in order to avoid the repercussions of litigation.

52.     As  in *Tombigbee*, the instant Defendants violate FACA's requirements that the Commission's ultimate work product be "fair and balanced composition of the committee" and that the Commission and its ultimate work product not be "'inappropriately influenced' by the appointing authority." *See* 5 U.S.C. App. § 5 *et seq.; Tombigbee*, 26 F.3d at 1106.

53.     Defendants also violate FACA by not providing reasonable public participation in activities. 41 C.F.R. § 101-6.1009(h), which the Vice President, as Chair must follow per 41 C.F.R § 101-6.1011(b), provides that he "shall ensure: . . . [t]he opportunity for reasonable public participation in advisory committee activities." "Public observation and comment must be contemporaneous to the advisory committee process itself." *See Tombigbee*, 26 F.3d at 1106. The Commission's actions violate FACA as the public cannot participate.

54.     The Defendants also violate 5 U.S.C. app. 2 § 10(b), which requires:

the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist.

55.     There is vast evidence that Defendants have violated, and will continue to violate, FACA, including through their stated intentions to disseminate protected information to third parties, whether within or not within the federal government, for their own use, and in other ways not yet known. Plaintiffs have established a likelihood of success on the merits.

**2. Violations of Florida Privacy Laws**

56.     Art. I, § 23, Fla. Const. guarantees the right of privacy, and Fla. Stat. § 97.0585, mandates confidentiality of certain voter information data. Subsequent to this Court ordering the Florida Secretary of State to comply with Florida privacy laws in its submission of voter data to the Commission, *Joyner*, 2017 WL 3113486, at *1, *see also* ECF No. 31, Florida submitted voter data to the Commission. What has become of that data is shrouded in secrecy.

57.     For that reason, the Defendants should be enjoined from violating any Florida privacy laws. Further, the Florida Secretary of State must remain bound by this Court's Order of July 20, 2017 [ECF No. 31], including the representations contained in his July 6, 2017 letter

(**Exhibit "T"**), and he must continue to comport with all protections governed by Florida Law.

**B.    Plaintiffs Will Suffer Irreparable Harm.**

58.    Unless a TRO is granted, Plaintiffs, their members, and the public face imminent threat of their private, personal data – which was obtained under the facade of a FACA commission – being transferred to ICE and other persons, many of whom may not yet be known, to suppress the right to vote and other reasons not yet known. The Defendants' activity is not authorized by any statute or Executive Order, is in violation of FACA, and seeks to disseminate protected, private information. The Commission's activities are of great public importance and concern, especially as this unlawful dissemination will touch upon the fundamental right to vote.

59.    The Federal Defendants have provided no assurances that they will protect the private data collected by the Commission. In fact, the President's termination of the Commission, which appears to have been done in concert with Secretary Kobach so that Secretary Kobach, the White House, and others can continue the Commission's work without having to comply with FACA and other federal law, creates imminent threat of harm. *See Does v. Univ. of Wash.*, 2016 WL 4147307, at *2 (W.D. Wash. Aug. 3, 2016) (entering TRO to prevent disclosure of personal identifying information, including phone numbers and email addresses). "In the age of the internet, when information is made public quickly and without borders, it is nearly impossible to contain an impermissible disclosure after the fact, as information can live on in perpetuity in the ether to be shared for any number of deviant purposes." *Wilcox v. Bastiste*, 2017 WL 2525309, at *3 (E.D. Wash. June 9, 2017) (preliminary injunction entered where release of personal DMV information would cause irreparable harm).

60.    Now that the Commission has the private data it sought and the President has terminated the Commission, there is no way to know the extent to which Secretary Kobach and

the White House will work together to suppress the right to vote. It is impossible to know the full extent of the Defendants' violations. "If public commentary is limited to retrospective scrutiny, the Act is rendered meaningless." See *Tombigbee*, 26 F.3d at 1106. Absent injunctive relief, irreparable harm to Plaintiffs and the public is imminent.

61.     "The right to vote is a 'precious' and 'fundamental' right." "Voting is, indisputably, a right 'of the most fundamental significance under our constitutional structure.'" *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1256 (N.D. Fla. 2016) (citing sources). As explained by the Eleventh Circuit, when it comes to FACA, "[b]ecause the matters are so serious and of such great concern to so many with differing interests, it is absolutely necessary that the procedures established by Congress be followed to the letter. *Tombigbee*, 26 F.3d at 1107 n.9. Thus, what the Defendants are doing – perpetrating an all-out assault on the right to vote, with Secretary Kobach making it clear he is working with the White House to "Stop Aliens From Voting" using the Commission's data for their own means in violation of FACA – is much, much worse than when the FWS panel in *Tombigbee* ignored FACA's openness and fairness requirements to work to make the Alabama Sturgeon an endangered species. The extent of the harm to Plaintiffs and the public in this case is immense.

## C. The Balance of Harm Supports Entry of Injunctive Relief

62.     The balance of harm supports injunctive relief as Plaintiffs and the public will be imminently harmed if their information is disclosed by Defendants, who have violated numerous laws. This outweighs any delay Defendants could endure from the injunctive relief, since it will simply restrain Defendants to follow the law. *See generally Gates v. Schlesinger*, 366 F. Supp. 797, 801 (D.D.C. 1973) ("The Court finds no injury to Defendants in being obliged to conform to the open meeting requirement imposed by [FACA]"). The Commission has no reasonable or

legitimate use for the data now that it has been disbanded, and its disbanding does not mean there is a legitimate public purpose or interest in simply passing that data off to another agency.

63.     Any non-trivial interest against disclosure warrants non-disclosure of personal identifying information where there is no public interest in the disclosure. *U.S. Dept. of Def.*, 510 U.S. at 500; *Fed. Labor Relations Auth.*, 977 F.2d at 549. Thus, the harm from improper data disclosure outweighs any harm to Defendants, which is none. *See U.S. Dept. of Def.*, 510 U.S. at 500–01. There is no public interest in creating an illegal federal database of all American voters' personal information, and then disseminating that information with no oversight.

### D. Entry of the Relief Would Serve the Public Interest

64.     A TRO serves the public interest since Defendants will have to comply with law. "There is generally no public interest in the perpetuation of unlawful agency action. . . . To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters*, 838 F.3d at 12; *accord United States v. Ala.*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("Frustration of federal statutes and prerogatives are not in the public interest[.]"). Moreover, "FACA's principal purpose was to enhance the public accountability of advisory committees established by the Executive Branch and to reduce wasteful expenditures on them." *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 459 (1989); *Gates*, 366 F. Supp. at 801 (D.D.C. 1973) ("public interest will be best served by requiring strict compliance with the letter and spirit of [FACA]").

65.     Next, the public interest is to prevent the transfer of private, protected voter data to others who are not affiliated with the Commission for illegitimate, non-Commission purposes. The Commission is disbanded and passing the data collected to other sources is in direct conflict with the public's interest. While "publicly available [information is in] voter registration lists, . . .

[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form." *U.S. Dept. of Def.*, 510 U.S. at 500–01. Absent injunctive relief, the Defendants will disseminate an unauthorized federal database of Americans' personal information, without privacy protections or explanations how the data will be used. Secretary Kobach's plan to work with DHS, ICE, and the White House to "Stop Aliens From Voting," based upon an unsubstantiated voter fraud myth, weighs in favor of a TRO and a preliminary injunction.

### III. CONCLUSION

Plaintiffs respectfully request a TRO and/or preliminary or other injunctive relief prohibiting the Defendants from misappropriating, disseminating, selling, assigning, conveying, transferring, hypothecating, or utilizing, in any way, any private voter data or any other information collected or otherwise obtained by the Commission, and ordering the Florida Secretary of State to remain bound by this Court's Order of July 20, 2017 [ECF No. 31], and more specifically, remain bound by the representations contained in his July 6, 2017 letter, to continue to comport with all protections governed by Florida law, pending further order of Court. Plaintiffs also request any other relief that is just and proper.

Dated: January 5, 2018

Respectfully submitted,

*S/ H.K. Skip Pita*
**H.K. SKIP PITA**
Florida Bar No. 101974
**PITA WEBER DEL PRADO**
9350 S. Dixie Hwy., Suite 1200
Miami, FL 33156
Tel: (305) 670-2889
Fax: (305) 670-6666
spita@pwdlawfirm.com

*S/ Jason B. Blank*
**JASON B. BLANK**
Florida Bar No. 28826
**HABER BLANK, LLP**
888 S. Andrews Ave., Suite 201
Fort Lauderdale, FL 33316
Tel: (954) 767-0300
Fax: (954) 949-0510
eservice@haberblank.com
jblank@haberblank.com

*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3550
Miami, FL 33131-154
Tel: (305) 789-5989
Fax: (305) 789-5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com

*S/ Marc A. Burton*
**MARC A. BURTON**
Florida Bar No. 95318
*S/ Daniel J. Poterek*
**DANIEL J. POTEREK**
Florida Bar No. 85204
**THE BURTON FIRM, P.A.**
2999 N.E. 191 Street, Suite 805
Miami, Florida 33180
Tel: (305) 705-0888
Fax: (305) 705-0008
mburton@theburtonfirm.com
dpoterek@theburtonfirm.com
pleadings@theburtonfirm.com

*S/ Larry S. Davis*
**LARRY S. DAVIS**
Florida Bar No. 437719
*S/ Shana Korda*
**SHANA KORDA**
Florida Bar No. 109504
**LAW OFFICE OF LARRY S. DAVIS, P.A**.
1926 Harrison Street
Hollywood, FL 33020-5018
Tel: (954) 927.4249
Fax: (954) 927-1653
larry@larrysdavislaw.com
shana@larrysdavislaw.com
courtdocs@larrysdavislaw.com

*S/ Freddy Funes*
**FREDDY FUNES**
Florida Bar No. 87932
*S/ Gerald Greenberg*
**GERALD GREENBERG**
Florida Bar No. 440094
*S/ Jarred L. Reiling*
**JARRED L. REILING**
Florida Bar No. 93930
*S/ Adam Schachter*
**ADAM SCHACHTER**
Florida Bar No. 647101
**GELBER SCHACHTER & GREENBERG, P.A.**
**Cooperating Counsel**
**American Civil Liberties Union Foundation of**
**Florida**
1221 Brickell Avenue, Suite 2010
Miami, FL 33131-3224
Tel: (305) 728-0950
Fax: (305) 728-0951
jreiling@gsgpa.com

Page 21

*S/ Nancy G. Abudu*
**NANCY G. ABUDU**
Florida Bar No. 111881
Legal Director
**AMERICAN CIVIL
LIBERTIES UNION OF
FLORIDA**
4343 W. Flagler St., Suite 400
Miami, FL 33134
Tel: (786) 363-2707
Fax: (786) 363-1108
nabudu@aclufl.org

*S/ Joseph S. Geller*
**JOSEPH S. GELLER**
Florida Bar No. 292771
**GREENSPOON MARDER, P.A.**
200 E. Broward Blvd., Suite 1500
Fort Lauderdale, FL 33301-1874
Tel: (954) 491-1120
Fax: (954) 331-2037
joseph.geller@gmlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

*S/ Marc A. Burton*
**MARC A. BURTON**
Florida Bar No. 95318

**CERTIFICATE OF GOOD FAITH CONFERRAL**
**WITH FLORIDA SECRETARY OF STATE**

I HEREBY CERTIFY that on January 5, 2018, Plaintiffs' counsel conferred with counsel for the Florida Secretary of State regarding this matter. At 11:08 am on January 5, 2018, Plaintiffs' counsel emailed counsel for all Defendants a nearly final, working draft of this Motion, and requested the Defendants' positions on the relief sought herein. During the afternoon of January 5, 2018, two of Plaintiffs' attorneys, Marc A. Burton and H.K. Skip Pita, both had telephone discussions with David Fugett, Esq., counsel for the Florida Secretary of State, which were followed up with email correspondence. Mr. Fugett represented in writing that "the Secretary will not object to a proposed order as long as the portion of the proposed order that is directed to the Secretary comports with the wording in the July 20, 2017 Order (DE 31)."

The contents of Mr. Fugett's email to Plaintiffs' counsel, which contains this language, is reproduced as follows:

Skip:

Thanks for your time this evening spent discussing the proposed order on your draft emergency motion.  As we discussed, the Secretary will not object to a proposed order as long as the portion of the proposed order that is directed to the Secretary comports with the wording in the July 20, 2017 Order (DE 31).

Examples of acceptable wording:

- "[t]he Defendants will be enjoined from violating any Florida privacy laws.  Further, the Florida Secretary of State will remain bound by this Court's Order of July 20, 2017. [DE 31] More specifically, the [Secretary] will remain bound by the representations contained in his July 6, 2017 letter, and the [Secretary] will continue to comport with all protections governed by Florida law."

- "[t]he [Secretary] remains bound by the representations contained in his July 6, 2017 letter, pending further order of Court.  By this ruling, the [Secretary] will continue to comport with all protections governed by Florida law."

The second example is more preferable as it more closely resembles the Court's earlier Order which addresses the same issue as to the Secretary.

As to the portion of the proposed order that is not directed to the Secretary, we have not reviewed it and take no position as to that portion of any proposed order.

Thanks again for your time.  If you need to discuss the above with me, feel free to contact me at any time on my cell phone at:  [REDACTED].

Regards,

David A. Fugett

*S/ Marc A. Burton*
**MARC A. BURTON**
Florida Bar No. 95318

## CERTIFICATE OF GOOD FAITH CONFERRAL
## WITH THE FEDERAL GOVERNMENT DEFENDANTS

I HEREBY CERTIFY that on January 5, 2018, Plaintiffs' counsel conferred with counsel for the Federal Government Defendants regarding this matter. At 11:08 am on January 5, 2018, Plaintiffs' counsel emailed counsel for all Defendants a nearly final, working draft of this Motion, and requested the Defendants' positions on the relief sought herein. During the afternoon of January 5, 2018, Plaintiffs' attorney, Marc A. Burton, had a telephone discussion with Carol Federighi, Esq. and Joseph Borson, Esq., counsel for the Federal Government Defendants, which was followed up with email correspondence. Mr. Borson represented in writing that "[w]e oppose your proposed emergency motion . . . ."

The contents of Mr. Borson's email to Plaintiffs' counsel, which contains this language, is reproduced as follows:

Mr. Burton,

We are in receipt of your proposed emergency motion for temporary restraining order and preliminary injunction, and/or other emergency injunctive relief as may be warranted. We oppose your proposed emergency motion on two primary grounds.

First, as you know, the Director of White House Information Technology ("DWHIT") is maintaining the data submitted by the States, and has made clear that no other entity or persons beyond a limited number of his technical staff have access to it. *See* Decl. of Charles Christopher Herndon, submitted in *Electronic Privacy Information Center v. Presidential Advisory Commission on Election Integrity*, No. 17-cv-1320 (D.D.C.), ECF No. 38-1. We have additionally been authorized to represent that the data will not be transferred or utilized; thus, there is no basis for emergency injunctive relief.

Second, given the threshold issues that defendants raised in their motion to dismiss plaintiffs' original complaint – issues that have not been cured by plaintiffs' amended complaint – the Court does not have jurisdiction to consider plaintiffs' proposed emergency motion. Even if the Court were to determine it did have jurisdiction, plaintiffs' amended complaint fails to state a claim for which emergency relief may be granted.

Should plaintiffs proceed with filing their proposed motion, the federal defendants request that you publish this response in the motion.

All my best,

Joey Borson

*S/ Marc A. Burton*
**MARC A. BURTON**
Florida Bar No. 95318

**CERTIFICATE OF COMPLIANCE WITH EMERGENCY
PROCEDURES PURSUANT TO LOCAL RULES**

I HEREBY CERTIFY that on January 5, 2018, Plaintiff's counsel executed a "Certification of Emergency," which was filed contemporaneously with this Motion. The emergency nature of this Motion stems from the Federal Government's statements and actions indicating that it intends to imminently transfer, to third parties, private voter data and other information obtained and produced by the Presidential Advisory Commission on Election Integrity, including to the Department of Homeland Security, Immigration and Customs Enforcement, and possibly others.

*S/ Marc A. Burton*
**MARC A. BURTON**
Florida Bar No. 95318

## SERVICE LIST

**H.K. SKIP PITA**
**PITA WEBER DEL PRADO**
9350 S. Dixie Hwy., Suite 1200
Miami, FL 33156
Tel: (305) 670-2889
Fax: (305) 670-6666
spita@pwdlawfirm.com
*Co-counsel for Plaintiffs*

**JASON B. BLANK**
**HABER BLANK, LLP**
888 S. Andrews Ave., Suite 201
Fort Lauderdale, FL 33316
Tel: (954) 767-0300
Fax: (954) 949-0510
eservice@haberblank.com
jblank@haberblank.com
*Co-counsel for Plaintiffs*

**BENEDICT P. KUEHNE**
**MICHAEL T. DAVIS**
**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3550
Miami, FL 33131-154
Tel: (305) 789-5989
Fax: (305) 789-5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com
*Co-counsel for Plaintiffs*

**MARC A. BURTON**
**DANIEL J. POTEREK**
**THE BURTON FIRM, P.A.**
2999 N.E. 191 Street, Suite 805
Miami, Florida 33180
Tel: (305) 705-0888
Fax: (305) 705-0008
mburton@theburtonfirm.com
dpoterek@theburtonfirm.com
pleadings@theburtonfirm.com
*Co-counsel for Plaintiffs*

**LARRY S. DAVIS**
**SHANA KORDA**
**LAW OFFICE OF LARRY S. DAVIS, P.A**.
1926 Harrison Street
Hollywood, FL 33020-5018
Tel: (954) 927.4249
Fax: (954) 927-1653
larry@larrysdavislaw.com
shana@larrysdavislaw.com
courtdocs@larrysdavislaw.com
*Co-counsel for Plaintiffs*

**FREDDY FUNES**
**GERALD GREENBERG**
**JARRED L. REILING**
**ADAM SCHACHTER**
**GELBER SCHACHTER &**
**GREENBERG, P.A.**
**Cooperating Counsel**
**ACLU Foundation of Florida**
1221 Brickell Avenue, Suite 2010
Miami, FL 33131-3224
Tel: (305) 728-0950
Fax: (305) 728-0951
jreiling@gsgpa.com
*Co-counsel for Plaintiffs*

**NANCY G. ABUDU**
Legal Director
**AMERICAN CIVIL
LIBERTIES UNION OF
FLORIDA**
4343 W. Flagler St., Suite 400
Miami, FL 33134
Tel: (786) 363-2707
Fax: (786) 363-1108
nabudu@aclufl.org
*Co-counsel for Plaintiffs*

**JOSEPH S. GELLER**
**GREENSPOON MARDER, P.A.**
200 E. Broward Blvd., Suite 1500
Fort Lauderdale, FL 33301-1874
Tel: (954) 491-1120
Fax: (954) 331-2037
joseph.geller@gmlaw.com
*Co-counsel for Plaintiffs*

**CHAD A. READLER**
**ELIZABETH J. SHAPIRO**
**JOSEPH E. BORSON**
**UNITED STATES DEPARTMENT OF JUSTICE**
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Tel: (202) 514-1944
Fax: (202) 616-8460
joseph.borson@usdoj.gov
*Counsel for the Federal Government Defendants*

**DAVID A. FUGETT**
**W. JORDAN JONES**
**FLORIDA DEPARTMENT OF STATE**
R.A. Gray Building, Suite 100
500 South Bronough Street
Tallahassee, Florida 32399-0250
Phone: (850) 245-6536
Fax: (850) 245-6127
david.fugett@dos.myflorida.com
Jordan.jones@dos.myflorida.com
*Counsel for Defendant Ken Detzner as
Florida Secretary of State*