## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 17-22568-CIV-COOKE/GOODMAN

**ARTHENIA JOYNER; MIKE SUAREZ; JOSHUA A. SIMMONS; BRENDA SHAPIRO; LUIS MEURICE; THE AMERICAN CIVIL LIBERTIES UNION OF FLORIDA, INC.; FLORIDA IMMIGRANT COALITION, INC.,**

      **Plaintiffs,**

**vs.**

**PRESIDENTIAL ADVISORY COMMISSION ON ELECTION INTEGRITY; MICHAEL PENCE,** in his official capacity as Chair of the Presidential Advisory Commission on Election Integrity**; KRIS KOBACH,** in his official capacity as Vice Chair of the Presidential Advisory Commission on Election Integrity; **EXECUTIVE OFFICE OF THE PRESIDENT OF THE UNITED STATES; EXECUTIVE OFFICE OF THE VICE PRESIDENT OF THE UNITED STATES; TIM HORNE,** in his official capacity as Administrator of the General Services Administration; **MICK MULVANEY,** in his official capacity as Director, Office of Management and Budget; **KEN DETZNER,** in his official capacity as Florida Secretary of State,

      **Defendants.**

_____/

**PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATIONS ON PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION [ECF NO. 97] WITH REQUEST FOR *DE NOVO* CONSIDERATION; AND ALTERNATIVE MOTION TO COMPEL COMPLIANCE WITH JANUARY 18, 2018 ORDER [ECF NO. 83]**

Plaintiffs, through their counsel, file the instant objections to the United States Magistrate Judge's Report and Recommendations ("R&R") of February 6, 2018 [ECF No. 97], upon Plaintiffs' Emergency Motion for Injunctive Relief [ECF No. 69] ("Motion"). Plaintiffs seek *de novo* review pursuant to all applicable authority, including but not limited to 28 U.S.C. 636(b)(1), Southern District of Florida Magistrate Judge Rule 4, and Federal Rule of Civil Procedure 72.

Specifically, the Plaintiffs request that the Motion be granted, and that the Court decline to adopt the R&R on the basis that:

(1)　　The R&R is predicated upon errors of fact, in that it is erroneously based upon the Motion being solely about state voter data. To the contrary, the Motion also addresses the other documents in the Commission's possession;

(2)　　The R&R fails to appropriately consider the effects and repercussions of the Federal Defendants' refusal to comply with the District Judge's January 18, 2018 order [ECF No. 83] requiring a specific declaration from a Commission member;

(3)　　The R&R fails to appropriately consider the substantial threat of irreparable harm based upon the Federal Defendants' conduct; and

(4)　　The R&R improperly relies on the Federal Defendants' "factual update" and unsworn letter from Secretary Kris Kobach, which the District Court already determined was insufficient to address Plaintiffs' concerns.

In support, Plaintiffs state as follows:

## Relevant Background

Plaintiffs sought emergency injunctive relief to prevent the now-disbanded Presidential Advisory Commission on Election Integrity ("Commission") and the other Federal Defendants from transferring or using aggregated voter registration information and *other documents and data* collected by the Commission. Plaintiffs asserted that emergency relief was needed because of official statements made by the Executive Branch and the former Vice Chair of the Commission, Kansas Secretary of State Kris Kobach, affirmatively declaring that the information collected by the Commission would be transferred to a federal agency to continue the professed work of the Commission. Plaintiffs documented their assertions of the Executive Branch's intention to engage in the very misconduct that is at the core of this litigation. Failing prompt, corrective judicial action to maintain the *status quo* during the continued prosecution of this lawsuit, the Plaintiffs asserted, the very violations of law raised in this litigation would continue to occur, all to the detriment of the Plaintiffs and the millions of citizens in Florida and across the United States whose rights are at risk by the government's reckless and unauthorized conduct.

The United States Magistrate Judge declined to recommend approval of the emergency injunctive relief *without prejudic*e, concluding "(1) Plaintiffs have already obtained the emergency relief they seek, as the Commission no longer exists and is no longer collecting state voter data and the voter data previously collected will not be transferred or used except for the possible transfer to the National Archives; (2) it seems clear that Secretary Kobach's statements to the media about providing the voter data to law enforcement agencies now appear to be incorrect predictions or personal opinions; and (3) Plaintiffs have not met their burden of establishing that they face a substantial threat of irreparable injury without injunctive relief.

[ECF No. 97]. Although the R&R "does not make any findings or reach any conclusions about Plaintiffs' allegations concerning Secretary Kobach …" *id.*, *de novo* review is needed because the R&R is based on misinformation and incomplete information provided by the Federal Defendants, and contains erroneous facts and conclusions that, if accurately determined, support the well-founded request for emergency injunctive relief.

In furtherance of these objections, Plaintiffs incorporate the contents of their Emergency Motion for Injunctive Relief [ECF No. 69] and Omnibus Reply [ECF No. 95], together with the documents submitted in support of the injunctive request. Viewed together, these materials make out a plain case for issuance of injunctive relief. By approving the requested relief, this Court can act to protect the status quo during the prosecution of this action, without any meaningful harm to the Federal Defendants or the State of Florida. Preliminary injunctive relief is consistent with the public interest.

### The R&R is Predicated Upon Materials Error of Fact

The R&R states that Plaintiffs' "emergency motion (as opposed to the entire case) focused only on the voter information, not the other Commission 'records' that may not have been completely turned over (because Plaintiffs suspect that some Commissioners may have retained some 'records')." [ECF No. 97 at p. 27]. The R&R declines to issue injunctive relief on this basis. The R&R is incorrect. As will be shown below, the Motion addresses more than just state voter data.

In fact, the District Judge's January 18, 2018 order [ECF No. 83] ("January 18th Order") on the Federal Defendants' appeal of the Magistrate Judge's January 8, 2018 order [ECF No. 80] recognizes the relevant distinction between state voter data and other documents and information possessed by the Commission. To wit, the January 18th Order provides that:

In light of statements made by Mr. Kobach after the termination of the Commission, additional information regarding the Commission and its activities is necessary to render an informed decision on Plaintiff's Emergency Motion (ECF No. 69). Federal Defendants should not be able to avoid making statements regarding the Commission simply because the Commission was terminated—and terminated specifically as a result of pending lawsuits. * * *

***Federal Defendants shall submit a declaration from Kris Kobach, or another member of the Commission*** with knowledge of the Commission's activities and authority to speak on the Government's behalf, stating ***what information was collected or created by the Commission and/or its members on behalf of the Commission***, where that information was and is being stored, by whom the information has been accessed, and what plans were made by the Commission to maintain or dispose of the information, ***including the voter information data*** held by the DWHIT, upon termination of the Commission.

[ECF No. 83] (emphasis added).

The January 18th Order is not limited to state voter data. To the contrary, the January 18th Order required the Federal Defendants to have a Commission member answer numerous questions about "what information was collected or created by the Commission and/or its members on behalf of the Commission." The Court specifically ordered the Federal Defendants to address "what plans were made by the Commission to maintain or dispose of the information, including the voter information data held by the DWHIT, upon termination of the Commission." The Court's January 18th Order in no way *limits* disposition of this issue to just the state voter data.

The January 18th Order posed numerous essential questions to the Federal Defendants that the Court deemed necessary to make an informed decision on Plaintiffs' Motion. These essential questions were relevant and proper given the substance of the Motion. To be sure, the Motion does address state voter data, but it is in no way limited to state voter data. Among other things, the Motion states as follows:

Plaintiffs, pursuant to Fed. R. Civ. P. 7 and 65, seek an emergency temporary restraining order and/or a preliminary injunctive and/or other appropriate

injunctive relief prohibiting Defendants from misappropriating, disseminating, selling, assigning, conveying, transferring, hypothecating, or utilizing, in any way, any private voter data *or any other information collected or otherwise obtained by the Presidential Advisory Commission on Election Integrity* (the "Commission"), and ordering the Florida Secretary of State to remain bound by this Court's July 20, 2017 Order [ECF No. 31] and to continue to comport with all protections governed by Florida law, pending further order of Court.

Motion at p. 1 (emphasis added).

Contemporaneous with the signing of Executive Order 2, the White House released a press release, stating:

> Despite substantial evidence of voter fraud, many states have refused to provide the Presidential Advisory Commission on Election Integrity with basic information relevant to its inquiry. Rather than engage in endless legal battles at taxpayer expense, today *President Donald J. Trump signed an executive order to dissolve the Commission, and he has asked the Department of Homeland Security to review its initial findings* and determine next courses of action.

Motion at ¶ 26 (emphasis added).

On January 4, 2018, *the White House Press Secretary said "we are going to send the preliminary findings from the Commission to the Department of Homeland Security* and make determinations on the best way forward from that point" because "that was the agency best determined by the Administration and we are moving forward in letting them take over the process."

Motion at ¶ 35 (emphasis added).

> "*The public has no idea the scope of the information being kept by the Federal Defendants and what is being done with it.*"

Motion at ¶ 38 (emphasis added).

> *The Defendants, Commission members, and others should not be permitted to utilize the data and information* as they wish, which in this case is to "Stop Aliens From Voting."

Motion at ¶ 44 (emphasis added).

In this case, the Federal Defendants have conducted extensive business in violation of FACA, *including but not limited to obtaining personal, private data about voters in Florida and across the country* without even conferring with the Commission's members, much less the public; and then storing it at the White

House, to be distributed by Secretary Kobach, the White House, ICE, and maybe others, with no public discussion or approval. Even assuming, for the sake of argument, that the Presidential Advisory Commission on Election Integrity were ever a legitimate and bipartisan commission (which it never was), there was certainly no provision in the law allowing the data it collected to be hidden from public and then disseminated to others within and not within the federal government for their own means.

Motion at ¶ 50 (emphasis added).

> *There is vast evidence that Defendants have violated, and will continue to violate, FACA, including through their stated intentions to disseminate protected information to third parties, whether within or not within the federal government, for their own use, and in other ways not yet known.* Plaintiffs have established a likelihood of success on the merits.

Motion at ¶ 55 (emphasis added).

> Now that the Commission has the private data it sought and the President has terminated the Commission, there is no way to know the extent to which Secretary Kobach and the White House will work together to suppress the right to vote. *It is impossible to know the full extent of the Defendants' violations.* "If public commentary is limited to retrospective scrutiny, the Act is rendered meaningless." *See Tombigbee*, 26 F.3d at 1106. Absent injunctive relief, irreparable harm to Plaintiffs and the public is imminent.

Motion at ¶ 60 (emphasis added).

> *Secretary Kobach making it clear he is working with the White House to "Stop Aliens From Voting" using the Commission's data for their own means in violation of FACA* – is much, much worse than when the FWS panel in *Tombigbee* ignored FACA's openness and fairness requirements to work to make the Alabama Sturgeon an endangered species. The extent of the harm to Plaintiffs and the public in this case is immense.

Motion at ¶ 61 (emphasis added).

> Plaintiffs respectfully request a TRO and/or preliminary or other injunctive relief prohibiting the Defendants from misappropriating, disseminating, selling, assigning, conveying, transferring, hypothecating, or utilizing, in any way, any private voter data *or any other information collected or otherwise obtained by the Commission*, and ordering the Florida Secretary of State to remain bound by this Court's Order of July 20, 2017 [ECF No. 31], and more specifically, remain bound by the representations contained in his July 6, 2017 letter, to continue to comport with all protections governed by Florida law, pending further order of Court. Plaintiffs also request any other relief that is just and proper.

Motion at p. 20 (emphasis added).

Moreover, the Motion (a) discusses Secretary Kobach having prepared proposed amendments to the National Voter Registration Act ("NVRA") for the Department of Homeland Security to make it more difficult to vote; (b) discusses Kobach having prepared a strategic plan for the Department of Homeland Security that involved that agency amending the NVRA; and (c) spends a considerable number of pages arguing the applicability of *Alabama-Tombigbee Rivers Coalition v. Department of Interior*, 26 F.3d 1103 (11th Cir. 1994), in which the government was enjoined from using "the product of a tainted procedure," especially a FACA committee's report, in putting forth new laws. *Id.* at 1105-07.

Finally, even assuming *arguendo* that the Motion did not directly address all of the things quoted above, the Plaintiffs' prayer for relief sought "any other relief that is just and proper." Under these very troubling circumstances - *where the government refuses to answer the Court's questions about the existence and disposition of numerous types of documents* - relief that is just and proper certainly involves those documents. *See generally Stephenson v. Ellis*, 2013 WL 1197723, at *3 (N.D. Fla. Jan. 25, 2013) (liberally construing a general prayer for relief); *cf. Nickell v. Bank of Am., N.A.,* 2012 WL 394467, at *5 (W.D. Tenn. Feb. 6, 2012) (". . . district courts retain discretion to extend relief beyond the bounds of the specific relief requested . . .") (citing *Walden v. Bodley*, 39 U.S. 156, 156 (1840) ("Under the general prayer for relief, the Court will often extend relief beyond the specific prayer, and not exactly in accordance with it.").

Simply stated, the Motion is in no way limited to only state voter data.[1] As discussed

---

[1] The R&R addresses a section in Plaintiffs' Reply Brief in support of their Motion, in which Plaintiffs suggest that state voting data should be destroyed. The R&R states that the Court cannot consider such a remedy because it was not argued in Plaintiffs' Motion. To be clear, the reason destruction of the state voter data was addressed in the Reply Brief was because

herein, the Motion addresses other documents as well. In recommending that Plaintiffs' Motion be denied, the R&R states that "Plaintiffs do not specify what these other documents and information might be, and Mr. Kossack's declaration does not shed light on them either." [ECF No. 97 at 27]. To the extent the Motion does not specify what exactly these other documents are, that is because Commissioners (including Secretary Kobach) possess these documents, which have not been turned over to the White House. The substance of those documents is known only to those Commissioners. As discussed in greater detail below, that is why the District Court entered its January 18th Order: to learn what other documents are out there, and what has and will become of them. The Federal Defendants refused to answer the Court's questions. The R&R improperly holds the Defendants' refusal to answer the Court's questions *against the Plaintiffs*. Rather than hold the Defendants' noncompliance against Plaintiffs, the Plaintiffs' Motion should instead be granted.

### Plaintiffs Have Established Irreparable Harm

The R&R incorrectly finds that Plaintiffs have failed to establish irreparable harm. However, the record is clear that the Plaintiffs will suffer irreparable harm absent an injunction.

First, the law is clear that an injury is irreparable "only if it cannot be undone through monetary remedies." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 2009 WL 10667504, at *4 (S.D. Fla. Apr. 16, 2009) (Cooke, J.) (citing *Cunningham v. Adams*, 808 F.2d 815, 821 (11th Cir. 1987)). The instant case is exactly such a case because monetary damages cannot undo any improper dissemination of documents or information by the Federal Defendants or their agents. Absent an injunction, there is nothing to stop them from doing so.

The R&R also classifies the misuse of Commission data and information as speculative,

---

the Federal Defendants argued in opposition to the Motion that they intended to destroy the state voter data.

citing, among other things, to *TransUnion Risk & Alternative Data Solutions, Inc. v. Challa*, 676 Fed. Appx. 822 (11th Cir. 2017). However, *TransUnion* supports the granting of Plaintiffs' Motion in the instant case.

In *TransUnion*, the plaintiff sought a preliminary injunction to prevent disclosure of confidential and proprietary information. The defendant testified that he had not and would not disclose any confidential and proprietary information. The district court found the defendant's testimony credible, and used that testimony as justification for denying the preliminary injunction request on grounds that the threat of irreparable harm was speculative. The Eleventh Circuit affirmed the denial of the preliminary injunction on the basis that the lower court did not err in accepting the defendant's testimony as credible and, thereby, classifying the plaintiff's concerns as speculative.

The instant case has no comparable testimony to support a denial of the Plaintiffs' Motion. Unlike in *TransUnion*, which had direct testimony from the defendant, the Federal Defendants have refused even to submit a declaration from a Commission member, despite being required to do so by the District Judge's January 18, 2018 order. By refusing to submit a declaration from a Commission member concerning "what information was collected or created by the Commission and/or its members on behalf of the Commission, where that information was and is being stored, by whom the information has been accessed, and what plans were made by the Commission to maintain or dispose of the information, including the voter information data held by the DWHIT, upon termination of the Commission," the Federal Defendants are only compounding Plaintiff's legitimate concerns over the use of Commission data and information. Simply put, the Federal Defendants' refusal to submit the required declaration further calls into question their credibility and truthfulness. Without credible testimony concerning the use of

Commission data and information, like the type in *TransUnion*, the R&R wrongfully classifies Plaintiffs' concerns as speculative, when in fact the threat of irreparable harm is concrete and imminent.

For example, in Andrew Kossack's Sixth Declaration dated January 26, 2018 [ECF No. 89-5], Mr. Kossack plainly acknowledges former Commission members have retained Commission records and data. Specifically, Mr. Kossack stated, "[e]ach of these members complied with instructions and provided the records they collected to either myself or to DOJ counsel, ***other than certain records the members noted they were retaining***." (emphasis added). Mr. Kossack also states that "[t]o the extent that individual former Commission members retain copies of non-public Commission records, the [Executive Office of the President] sent a letter dated January 17, 2018, requesting that they not independently transfer them to the U.S. Department of Homeland Security or any other entity." [ECF No. 89-5 at 5].[2] These statements further validate Plaintiffs' concerns and support a finding that the irreparable harm is concrete and imminent.

Similarly, counsel for the Federal Defendants has acknowledged the existence of other Commission records and data. In a January 12, 2018 email to counsel for former Commissioner Matthew Dunlap (who is presently suing the Commission because Secretary Kobach and others refused to provide him with documents and otherwise excluded him from Commission business), the DOJ stated that it "reached out to Secretary Kobach and requested that he not share with DHS or any other federal entity, other than the White House for preservation purposes, any Commission records not otherwise already made public . . ." [ECF No. 95-2]. The DOJ also

---

[2] Commission member Matthew Dunlap filed papers in his own litigation against the Commission stating that he has not received the purported January 17, 2018 letter referenced in Mr. Kossack's Sixth Declaration in the instant case. *Dunlap v. Presidential Advisory Commission on Election Integrity*, CV 17-2361 (CKK) at D.E. 48 (D.D.C. Jan. 31, 2018).

stated that the White House "will also request that former Commissioners (including [Dunlap]) not independently transfer Commission records to DHS or any other entity." *Id.* The fact that the DOJ is "requesting" that former Commissioners not disseminate any documents, but has taken the official position in litigation that it lacks control over the former Commissioners, emphasizes the severity and urgency of this situation, and shows why an injunction must issue. The public has no way to truly know what documents Secretary Kobach and his cohorts possess that they have not produced to the White House, since Mr. Kossack declared that the Commissioners provided them with documents ***"other than certain records the members noted they were retaining."***

Absent an injunction, Secretary Kobach and others can make good on Kobach's word that they will send documents to ICE and DHS "to take over the commission's work and begin efforts to match state voter rolls to federal databases of noncitizens. Moreover, absent an injunction, Secretary Kobach and others will be empowered to work to revise the NVRA in order to unconstitutionally abridge the right to vote, as he has long worked with the President to do, as set forth in the Motion.

In *Tombigbee*, 26 F.3d at 1103, the Department of the Interior was enjoined from producing laws to make the Alabama Sturgeon an endangered species based upon tainted FACA documents. So too must this Administration be similarly enjoined from utilizing Secretary Kobach and his cohorts' documents in any way, including but not limited to preparing anti-voting legislation like that already proposed by Secretary Kobach to the President, as set forth in the Motion.

The January 18th Order made it clear that only Commission members were in the best position to answer the Court's questions, based upon Plaintiffs' valid concerns. Specifically, the

District Judge explained, with regard to Christopher Herndon, the Director of White House

Information Technology, that:

> While Mr. Herndon can attest to who accessed the voter information stored on the White House system, he himself was not a member of the Commission who can state with authority and knowledge what additional information or records may have been collected or created, where they were kept, by whom they were accessed, and what plans were made to keep or dispose of them once the Commission ended.

[ECF No. 83].

Moreover, the District Judge concluded that a declaration from a Commission member

was essential because "*[h]aving reviewed the declaration of Mr. Herndon and the letter from

Mr. Kobach, I find that Plaintiffs' concerns about the intended use of information collected by

the Commission are not fully addressed.*" *Id.*

In response to the District Judge's conclusion, the Federal Defendants filed a declaration

from Andrew Kossack, who was *also* not a Commission member. Even the R&R acknowledges

that "Mr. Kossack's recently-filed declaration may leave unanswered some questions about the

continued existence and location of other categories of Commission-related documents and

information besides the voter data . . . ." [ECF No. 97 at 27]. Thus, just as the District Judge held

in the January 18th Order, Plaintiffs' concerns about the intended use of information collected by

the Commission are *once again* "not fully addressed."

The logical inference to be drawn is that the Federal Defendants will not provide a

declaration from a Commission member because the declaration would be damaging to the

government. As will be discussed below, this is all the more concerning in light of the fact that

the Federal Defendants only ever provided an *unsworn* letter from Secretary Kobach in this case,

shortly after Kobach was sanctioned by a federal court for making misleading statements.

The Federal Defendants' refusal to comply with the January 18th Order heightens the

need for an injunction. Irreparable harm is concrete and imminent.

### The R&R Improperly Relies on the Federal Defendants' "Factual Update" and Unworn Letter from Secretary Kobach

The R&R relied on, and accepted at face value, the "factual update" offered by the Federal Defendants in their amended response [ECF No. 97 at 19-21]. Key to the R&R is the reliance on "a January 16, 2018 letter signed by Secretary Kobach, not a declaration made under penalty of perjury." [ECF No. 97 at 21, n. 5].

The R&R's reliance on Kobach's unsworn letter is erroneous because this Court has already determined that Kobach's unsworn letter does "not fully address" "Plaintiffs' concerns about the intended use of information collected by the Commission." [ECF No. 83].

Not only is Kobach's unsworn letter an insufficient basis upon which to deny the requested injunctive relief, but unsworn averments by Secretary Kobach are themselves inherently suspect. As stated in Plaintiff's Omnibus Reply [ECF No. 95 at 5, n.3], Secretary Kobach:

> has been recently sanctioned for making intentionally misleading statements in court. Several months ago, a federal court in Kansas upheld an inherent-power sanction against Kobach, which included a $1000 fine and the requirement that he be deposed, where Kobach "acted in bad faith, vexatiously, wantonly, or for oppressive reasons," where Kobach intentionally misled the court. *Fish v. Kobach*, 267 F. Supp. 3d 1297, 1302-03 (D. Kan. 2017).

The R&R should not have relied on the Federal Defendants' supplemental declaration for the very simple reason the "factual update" was submitted contrary to the January 18th Order directing the submission of a declaration from a Commission member with specific knowledge of the Commission's activities. Instead, as addressed above, the Federal Defendants submitted the declaration of a government functionary who was not a Commission member. The Federal Defendants' refusal to submit a declaration from any Commission member reveals a frightening

truth: The United States simply does not intend to put any Commission members on record, even if it means violating Court orders. Not only should the Court be skeptical of the Federal Defendants' position, it is flatly refuted by the White House's official comments and statements as to the intended use of the Commission's voluminous and unprecedented data and document accumulation. These statements were submitted as part of the Plaintiffs' submissions, and provide a sufficient reason to enter preliminary injunctive relief as a means to preserve the *status quo*.

**Alternatively, the Federal Defendants Should be
Ordered to Comply with the January 18th Order**

Alternatively, if the Court is hesitant to grant Plaintiffs' Motion at this time based upon the present record, then Plaintiffs submit that the Federal Defendants should once again be ordered to comply with the January 18th Order to assist the Court in its disposition of the Motion. In the Court's January 18th Order, the Federal Defendants were ordered to

> . . . submit a declaration from Kris Kobach, or another member of the Commission with knowledge of the Commission's activities and authority to speak on the Government's behalf, stating what information was collected or created by the Commission and/or its members on behalf of the Commission, where that information was and is being stored, by whom the information has been accessed, and what plans were made by the Commission to maintain or dispose of the information, including the voter information data held by the DWHIT, upon termination of the Commission.

As addressed above, the Federal Defendants failed to comply with the January 18th Order. An order once again directing the Federal Defendants to provide a declaration from a Commission member that fully complies with the January 18th Order's directives would assist the Court in its determination of the Plaintiffs' Motion. Such a declaration would also serve the public interest in that the government would have to fully answer these essential questions of great public importance.

**WHEREFORE**, Plaintiffs respectfully request that the Court (a) decline to adopt the Magistrate Judge's Report and Recommendation of February 6, 2018; (b) grant the Plaintiffs' Emergency Motion for Injunctive Relief in its entirety as to all documents in the Government's, the Commissioners', and their respective agents' possessions; (c) alternatively, order the Federal Defendants to comply with the January 18th Order in its entirety or as modified in the Court's discretion; and (d) grant any other relief that is just and proper.

Dated: February 13, 2018                      Respectfully submitted,

*S/ H.K. Skip Pita*
**H.K. SKIP PITA**
Florida Bar No. 101974
**PITA WEBER DEL PRADO**
9350 S. Dixie Hwy., Suite 1200
Miami, FL 33156
Tel: (305) 670-2889
Fax: (305) 670-6666
spita@pwdlawfirm.com


*S/ Benedict P. Kuehne*
**BENEDICT P. KUEHNE**
Florida Bar No. 233293
**MICHAEL T. DAVIS**
Florida Bar No. 63374
**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3550
Miami, FL 33131-154
Tel: (305) 789-5989
Fax: (305) 789-5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com


*S/ Larry S. Davis*
**LARRY S. DAVIS**
Florida Bar No. 437719
*S/ Shana Korda*
**SHANA KORDA**
Florida Bar No. 109504

*S/ Jason B. Blank*
**JASON B. BLANK**
Florida Bar No. 28826
**HABER BLANK, LLP**
888 S. Andrews Ave., Suite 201
Fort Lauderdale, FL 33316
Tel: (954) 767-0300
Fax: (954) 949-0510
eservice@haberblank.com
jblank@haberblank.com


*S/ Marc A. Burton*
**MARC A. BURTON**
Florida Bar No. 95318
*S/ Daniel J. Poterek*
**DANIEL J. POTEREK**
Florida Bar No. 85204
**THE BURTON FIRM, P.A.**
2875 N.E. 191 Street, Suite 403
Miami, Florida 33180
Tel: (305) 705-0888
Fax: (305) 705-0008
mburton@theburtonfirm.com
dpoterek@theburtonfirm.com
pleadings@theburtonfirm.com


*S/ Freddy Funes*
**FREDDY FUNES**
Florida Bar No. 87932
*S/ Gerald Greenberg*
**GERALD GREENBERG**
Florida Bar No. 440094

**LAW OFFICE OF LARRY S. DAVIS, P.A.**
1926 Harrison Street
Hollywood, FL 33020-5018
Tel: (954) 927.4249
Fax: (954) 927-1653
larry@larrysdavislaw.com
shana@larrysdavislaw.com
courtdocs@larrysdavislaw.com

*S/ Jarred L. Reiling*
**JARRED L. REILING**
Florida Bar No. 93930
*S/ Adam Schachter*
**ADAM SCHACHTER**
Florida Bar No. 647101
**GELBER SCHACHTER
& GREENBERG, P.A.
Cooperating Counsel
American Civil Liberties Union Foundation
of Florida**
1221 Brickell Avenue, Suite 2010
Miami, FL 33131-3224
Tel: (305) 728-0950
Fax: (305) 728-0951
jreiling@gsgpa.com

*S/ Nancy G. Abudu*
**NANCY G. ABUDU**
Florida Bar No. 111881
Legal Director
**AMERICAN CIVIL
LIBERTIES UNION OF
FLORIDA**
4343 W. Flagler St., Suite 400
Miami, FL 33134
Tel: (786) 363-2707
Fax: (786) 363-1108
nabudu@aclufl.org

*S/ Joseph S. Geller*
**JOSEPH S. GELLER**
Florida Bar No. 292771
**GREENSPOON MARDER, P.A.**
200 E. Broward Blvd., Suite 1500
Fort Lauderdale, FL 33301-1874
Tel: (954) 491-1120
Fax: (954) 331-2037
joseph.geller@gmlaw.com

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on February 13, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

*S/ Marc A. Burton*
**MARC A. BURTON**
Florida Bar No. 95318

## SERVICE LIST

**H.K. SKIP PITA**
**PITA WEBER DEL PRADO**
9350 S. Dixie Hwy., Suite 1200
Miami, FL 33156
Tel: (305) 670-2889
Fax: (305) 670-6666
spita@pwdlawfirm.com
*Co-counsel for Plaintiffs*

**JASON B. BLANK**
**HABER BLANK, LLP**
888 S. Andrews Ave., Suite 201
Fort Lauderdale, FL 33316
Tel: (954) 767-0300
Fax: (954) 949-0510
eservice@haberblank.com
jblank@haberblank.com
*Co-counsel for Plaintiffs*

**BENEDICT P. KUEHNE**
**MICHAEL T. DAVIS**
**KUEHNE DAVIS LAW, P.A.**
100 SE 2 Street, Suite 3550
Miami, FL 33131-154
Tel: (305) 789-5989
Fax: (305) 789-5987
ben.kuehne@kuehnelaw.com
mdavis@kuehnelaw.com
efiling@kuehnelaw.com
*Co-counsel for Plaintiffs*

**MARC A. BURTON**
**DANIEL J. POTEREK**
**THE BURTON FIRM, P.A.**
2875 N.E. 191 Street, Suite 403
Miami, Florida 33180
Tel: (305) 705-0888
Fax: (305) 705-0008
mburton@theburtonfirm.com
dpoterek@theburtonfirm.com
pleadings@theburtonfirm.com
*Co-counsel for Plaintiffs*

**LARRY S. DAVIS**
**SHANA KORDA**
**LAW OFFICE OF LARRY S. DAVIS, P.A**.
1926 Harrison Street
Hollywood, FL 33020-5018
Tel: (954) 927.4249
Fax: (954) 927-1653
larry@larrysdavislaw.com
shana@larrysdavislaw.com
courtdocs@larrysdavislaw.com
*Co-counsel for Plaintiffs*

**FREDDY FUNES**
**GERALD GREENBERG**
**JARRED L. REILING**
**ADAM SCHACHTER**
**GELBER SCHACHTER &**
**GREENBERG, P.A.**
**Cooperating Counsel**
**ACLU Foundation of Florida**
1221 Brickell Avenue, Suite 2010
Miami, FL 33131-3224
Tel: (305) 728-0950
Fax: (305) 728-0951
jreiling@gsgpa.com
*Co-counsel for Plaintiffs*

**NANCY G. ABUDU**
Legal Director
**AMERICAN CIVIL**
**LIBERTIES UNION OF**
**FLORIDA**
4343 W. Flagler St., Suite 400
Miami, FL 33134

**JOSEPH S. GELLER**
**GREENSPOON MARDER, P.A.**
200 E. Broward Blvd., Suite 1500
Fort Lauderdale, FL 33301-1874
Tel: (954) 491-1120
Fax: (954) 331-2037
joseph.geller@gmlaw.com

Tel: (786) 363-2707                          *Co-counsel for Plaintiffs*
Fax: (786) 363-1108
nabudu@aclufl.org
*Co-counsel for Plaintiffs*

**CHAD A. READLER**                          **DAVID A. FUGETT**
**ELIZABETH J. SHAPIRO**                      **W. JORDAN JONES**
**JOSEPH E. BORSON**                          **FLORIDA DEPARTMENT OF**
**UNITED STATES DEPARTMENT OF**               **STATE**
**JUSTICE**                                   R.A. Gray Building, Suite 100
Civil Division, Federal Programs Branch       500 South Bronough Street
P.O. Box 883                                  Tallahassee, Florida 32399-0250
Washington, DC 20044                          Phone: (850) 245-6536
Tel: (202) 514-1944                           Fax: (850) 245-6127
Fax: (202) 616-8460                           david.fugett@dos.myflorida.com
joseph.borson@usdoj.gov                       Jordan.jones@dos.myflorida.com
*Counsel for the Federal Government Defendants*   *Counsel for Defendant Ken Detzner as*
                                              *Florida Secretary of State*