UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-22568-CIV-COOKE/GOODMAN

ARTHENIA JOYNER, et al.,
    Plaintiffs,

vs.

PRESIDENTIAL ADVISORY
COMMISSION ON ELECTION
INTEGRITY, et al.,
    Defendants.
_____/

## OMNIBUS ORDER GRANTING MOTIONS TO DISMISS

THIS MATTER is before me upon Defendant Florida Secretary of State's ["Secretary Detzner"] Motion to Dismiss Amended Complaint (ECF No. 86) and Federal Defendants'[1] Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 87). Plaintiffs filed responses in opposition (ECF Nos. 99, 100), and Secretary Detzner and the Federal Defendants filed replies (ECF Nos. 103, 104). After careful consideration, and for the reasons discussed below, Defendants' motions are granted.

### I.   BACKGROUND

Plaintiffs filed the instant lawsuit against the Federal Defendants and Secretary Detzner alleging four Counts in their Amended Complaint: Violations of the Federal Advisory Committee Act ("FACA"), 5 U.S.C. app. 2, *et seq.*, against all the Federal Defendants (Count I), Breaches of Violations of Constitutional Separation of Powers and Article II against all the Federal Defendants (Count II), Violation of the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501, *et seq.*, against all Federal Defendants (Count III), and Violation of Florida Statute § 97.0585 against the Commission and Secretary

---

[1] The Federal Defendants are as follows: the Presidential Advisory Commission on Election Integrity ("Commission"); Michael Pence, in his official capacity as Chair of the Commission; Kris Kobach, in his official capacity as Vice Chair of the Commission; Executive Office of the President of the United States; Executive Office of the Vice President of the United States; Tim Horne, in his official capacity as Administrator of the General Services Administration; and Mick Mulvaney, in his official capacity as Director, Office of Management and Budget.

Detzner (Count IV). Plaintiffs' Amended Complaint essentially challenges "the legality of the actions of the newly created [Commission] and the legality of its directive requesting and collecting voter registration information of state-registered voters in Florida and throughout the United States." Am. Compl., ECF No. 65, ¶ 1.

On July 13, 2017, Plaintiffs filed a Motion for Temporary Restraining Order (ECF Nos. 4, 6), objecting to many of the Commission's actions, including the Commission's Request Letter to States asking the States to provide the Commission with various voter identification information. The Motion requested a temporary restraining order ("TRO") restraining all Defendants from collecting voter data in furtherance of creating a national, centralized voter database; conducting any business until fully complying with the provisions of FACA and the PRA; and transferring to the Commission individualized voter data from Secretary Detzner or otherwise. After a hearing, as well as a review of a ruling in a parallel case in the District Court for the District of Columbia,[2] I denied Plaintiff's Motion for TRO. *See* Ord. on Pl.'s Motion for TRO, ECF No. 31. In my Order on TRO, I acknowledged Secretary Detzner's position espoused in his July 6, 2017 letter to the Commission that he would only produce information allowed by Florida law and ordered that he would remain bound by those representations.

The case then proceeded on a normal track until January 3, 2018, when the President signed an Executive Order terminating the Commission. *See* Not. of Exec. Ord., ECF No. 68. Two days later, Plaintiffs filed an Emergency Motion for TRO and Preliminary Injunction (ECF No. 69), seeking an "emergency [TRO] and/or a preliminary injunct[ion] and/or other appropriate injunctive relief to prohibit Defendants from misappropriating, disseminating, selling, assigning, conveying, transferring, hypothecating, or utilizing . . . any private voter data or any other information collected or otherwise obtained by the [Commission], and ordering [Secretary Detzner] to remain bound by this Court's July 20, 2017 Order . . . ." Plaintiffs' Emergency Motion was based on statements made by the President's Press Secretary and Defendant Kobach, an alleged "notorious vote suppressor," which implied that the White House, Immigration and Customs Enforcement ("ICE"), and Defendant Kobach would work together to transfer the private data to ICE, allegedly to

---

[2] *Lawyers for Civil Rights Under Law v. Presidential Advisory Commission on Election Integrity*, Case No. 17-1354-CKK, ECF No. 17 (D.D.C. July 18, 2017).

purge voter rolls in a way that was not susceptible to being stalled through litigation. Emerg. Motion for TRO, 2. I referred the Emergency Motion to the Honorable Jonathan Goodman and the parties briefed the issues. The Federal Defendants submitted some factual updates[3] which included the following: all of the state voter data (including the voter date from Florida) was encrypted and stored in a separate container within a designated domain; only four members of the White House Informational Technology ("WHIT") department staff have or have had access to it, and those four staff members were not authorized to transfer or use the voter data; no Commission member was ever provided access to the data or currently has access; and the data would not be transferred to or accessed or used by DHS or any other agency, except to the National Archives and Record Administration ("NARA"), if the records are not otherwise destroyed. *See* Rep. and Rec., ECF No. 97, 19–20. Judge Goodman issued a Report and Recommendations recommending that the Emergency Motion be denied because, based on the factual updates, Plaintiffs had not established irreparable harm. *Id.* at 29. I agreed with Judge Goodman, adopting his Report and Recommendations. *See* Ord. Adopting Rep. and Rec., ECF No. 105.

While the Emergency Motion was being decided, Defendants filed the instant Motions to Dismiss, making several arguments, including mootness based upon the dissolution of the Commission. After careful review of the parties' arguments, I agree that Plaintiffs' claims are moot and the instant action is due to be dismissed.

## II.   LEGAL STANDARD

Article III of the Constitution confines federal courts to adjudicate only actual "cases" and "controversies." *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir. 1999) (citing *Allen v. Wright,* 468 U.S. 737, 750 (1984)). A moot action cannot be characterized as an active case or controversy. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335

---

[3] Judge Goodman ordered the Federal Defendants to submit an updated declaration from Defendant Kobach. ECF No. 71. The Federal Defendants objected and some litigation ensued, *see* ECF Nos. 76, 80, 81, ending in my Order on Federal Defendant's Appeal of Magistrate Judge's Order ("Order on Appeal") (ECF No. 83). My Order on Appeal required the Federal Defendants to submit a declaration from Defendant Kobach or another member of the Commission with knowledge of the Commission's activities and authority to speak on the Government's behalf. The Federal Defendants submitted a declaration from Mr. Andrew Cossack, Associate Counsel in the Office of the Vice President. I found his declaration substantially comported with my Order on Appeal. *See* Ord. Adopting Rep. and Rec., ECF No. 105, 3.

(11th Cir. 2004). "If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed." *Id.* at 1336. "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969).

However, "[t]he doctrine of voluntary cessation provides an important exception to the general rule that a case is mooted by the end of the offending behavior." *Troiano v. Supervisor of Elections in Palm Beach Cty., Fla.*, 382 F.3d 1276, 1282 (11th Cir. 2004). "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Georgia*, 633 F.3d 1297, 1309 (11th Cir. 2011) (internal citations and quotation marks omitted). Yet the law provides an "important exception to this important exception . . . ." *Id.* "[T]he case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). The Eleventh Circuit has decided that when the defendant is a government actor, "there is a rebuttable presumption that the objectionable behavior will *not* recur." *Troiano*, 382 F.3d at 1283 (emphasis in original) (citing *Coral Springs St. Sys., Inc. v. City of Sunrise*, 371 F.3d 1320, 1328–29 (11th Cir. 2004). "[A] challenge to government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Id.* at 1285.

### III. DISCUSSION

#### A. Secretary Detzner

Secretary Detzner moves to dismiss Plaintiffs' Amended Complaint on several grounds, one of them being mootness. Because I agree that this case is moot as to Secretary Detzner, I will not address his other grounds for dismissal.

Plaintiffs allege in their Amended Complaint that Defendant Kobach, on behalf of the Commission, "initiated a process to collect detailed voter information, including personal identifying information, from all 50 States and the District of Columbia." Am. Comp., ¶ 40. The information requested included the names, addresses, dates of birth, political party affiliation, last four digits of social security numbers, voting history, and

conviction information of all registered voters. *Id.* at ¶¶ 41–48. Plaintiffs correctly note that Florida law does not allow Secretary Detzner to disclose all of this information, a contention with which Secretary Detzner *agrees*. In fact, based on this undisputed interpretation of the law, Secretary Detzner sent a letter to the Commission on July 6, 2017, stating that much of the information requested was publicly available under Florida Public Records Law, Chapter 119 of Florida Statute, but that certain information, like driver's license and social security numbers, could not be provided under Fla. Stat. 97.0585. Accordingly, in my Order on TRO, I specifically found that Secretary Detzner's letter to the Commission appropriately acknowledged Florida privacy laws, and ordered Secretary Detzner to limit Florida's response to the Commission to the information allowed by Florida law. Secretary Detzner eventually uploaded information in compliance with Florida law and my Order on TRO—a fact Plaintiffs acknowledge.

Now that Florida has already provided the Commission with the publicly available information and the Commission has been disbanded, Plaintiffs do not explain how there remains a continuing case or controversy with respect to Secretary Detzner. Instead, Plaintiffs argue that the voluntary cessation doctrine should apply here and the burden should be on Secretary Detzner to show that the challenged conduct cannot reasonably be expected to start again. Plaintiffs, however, ignore the fact that when the defendant is a government actor, "there is a rebuttable presumption that the objectionable behavior will not recur." *Troiano*, 382 F.3d at 1283. The burden is therefore on Plaintiffs to show a "reasonable basis to believe that the policy will be reinstated if the suit is terminated." *Id.* at 1285. Plaintiffs have not met this burden, and simply argue that Secretary Detzner's submission of information occurred quickly and therefore can repeatedly evade review. This argument is disingenuous. Secretary Detzner did not submit any information to the Commission until after the issue had been considered by two separate Courts; there is therefore no basis to believe Secretary Detzner would submit information to a now-defunct Commission without Plaintiffs having the ability to challenge the action in court. This case is moot as to Secretary Detzner.

### B. Federal Defendants

The Federal Defendants also claim this case no longer presents a justiciable case or controversy and is therefore moot. Plaintiffs disagree, and point out that I acknowledged in

5

my Order on Appeal of Magistrate Judge's Order ("Order on Appeal") (ECF No. 83) that simply because a Commission ceases to exist does not necessarily render a case moot. While I still agree that dissolution of a Commission does not automatically moot a case, a careful review of the facts of this case and Plaintiffs' Amended Complaint show that the instant case has indeed become moot as to the remaining Federal Defendants. I therefore will not address the Federal Defendants other proposed grounds for dismissal.

### a. Defendants Commission, Pence, and Kobach

As an initial matter, Plaintiffs' claims for relief against the Commission, Michael Pence, in his official capacity as Chair of the Commission, and Kris Kobach, in his official capacity as Vice Chair of the Commission "[are] moot. [Defendants Pence and Kobach are] no longer the [Chair and Vice Chair of the Commission], and [the Commission] no longer exists. A declaratory judgment and use injunction against the nonexistent [Commission] and against [Defendants Pence and Kobach], who no longer hold[] the now non-existent position[s] of [the Commission's Chair and Vice Chair], would afford [Plaintiffs] no meaningful relief." *Miccosukee Tribe of Indians of Fla. v. S. Everglades Restoration All.*, 304 F.3d 1076, 1081 (11th Cir. 2002).[4]

### b. Remaining Federal Defendants

After the dismissal of three of the Federal Defendants, we are left with the Executive Office of the President of the United States, the Executive Office of the Vice President of the United States, Tim Horne, in his official capacity as Administrator of the General Services Administration, and Mick Mulvaney, in his official capacity as Director, Office of Management and Budget. They argue that now that the Commission has been dissolved, there is no reason to believe that any allegedly illegal practices will continue and that the relief sought in Plaintiffs' Amended Complaint has been effectuated. I agree.

Plaintiffs argue, however, that there remains a case or controversy because the voter data remains on the White House computer system and should not be allowed to remain there based on the Commission's allegedly tainted FACA procedures. Plaintiffs cite to *Alabama-Tombigbee Rivers Coalition v. Department of Interior*, 26 F.3d 1103, 1107 (11th Cir.

---

[4] While this issue was quickly briefed and considered in my Order on Appeal (ECF No. 83), Federal Defendants have further fleshed out the issue and it is now clear that the instant case is moot as to the Commission and Defendants Kobach and Pence in their official capacities as Commission members.

1994), which states, "[T]o allow the government to use the product of a tainted [FACA] procedure would circumvent the very policy that serves as the foundation of the Act." The instant case is markedly different, however. In *Alabama-Tombigbee*, the plaintiffs sought to enjoin the defendant agency from "publishing, employing and relying upon the Advisory Committee report" which was allegedly created in violation of FACA. *Id.* at 1105. As Defendants note, mootness was not at issue in *Alabama-Tombigbee*, and here the Commission did not create any report. Further, the data collected by the Commission, whether or not collected in violation of FACA, is not being published, employed, or relied upon by the now-defunct Commission—or anyone else—and will likely be destroyed. *See* Third Herndon Decl., ¶¶ 3–4.

Plaintiffs contend an *intent* to destroy data is not a *commitment* to do anything.[5] However, Plaintiffs did not ask for the destruction of the data in their Amended Complaint. Even if they had, Plaintiffs' Amended Complaint relies heavily on an Amicus Brief, submitted by former national security officials in a similar District of Columbia case, to show that the aggregation of the voter data in one place "may be a compelling target for foreign adversaries seeking to interfere in future elections through a variety of means, as well as for cyber criminals and other malicious actors." Am. Compl., ¶ 92 (quoting Amicus Brief of Former National Security and Technology Officials in *Common Cause v. Presidential Advisory Commission on Election Integrity*, U.S.D.C. Case No. 17-Cv-01398-RCL (D.D.C) (ECF No. 38-1)). As frightening a hypothetical as that may be, I cannot say that it rises above the speculative level to create a "certainly impending" present risk of injury, which would constitute a live controversy and save this case from mootness. *See Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 410 (2013) (A "threatened injury must be certainly impending to constitute injury in fact.").

Moreover, now that the Commission is disbanded, the proper Defendant in an action seeking the destruction of data would be the current custodian of the data. *See Ctr. for Arms Control & Non-Proliferation v. Pray*, 531 F.3d 836, 839 n* (D.C. Cir. 2008) ("Even if the [plaintiff's] claims against the Commission and its executive director became moot when the

---

[5] Plaintiffs argue that Defendants may hold their data indefinitely; however, Mr. Herndon's declaration states that the information is being maintained "pending resolution of outstanding litigation involving the Commission and pending consultation with [National Archives and Records Administration], pursuant to Federal law." Third Herndon Decl., ¶ 4.

Commission relinquished custody of its records and ceased to exist, [a] case is not moot because, regardless whether mandamus relief is available, a declaration of the [plaintiff's] legal right to the materials could form the basis of an injunction against the [*current legal custodian of the records*].") (alterations and emphasis added). None of the remaining four Defendants are the custodians of the data, and they are therefore not in a position to release or destroy the information.

Similarly, to the extent Plaintiffs seek access to other records besides the voter data,[6] such as "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee," 5 U.S.C. app. 2 § 10(b), such access claims are also limited at this time to the current custodian of the records. *See Ctr. for Arms Control*, 531 F.3d at 838, 839 n*. As stated above, such claims are moot as to the Defendants in this case.

As a last attempt to save their case, Plaintiffs claim that the voluntary cessation doctrine applies in the instant case as to the Federal Defendants. Plaintiffs' fail to address any of Federal Defendants' cited authority, much of which pertains to FACA lawsuits, and simply cite to *Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs*, 868 F.3d 1248, 1256–57 (11th Cir. 2017) in support of their position. In *Flanigan's*, the Eleventh Circuit noted as follows: "Because of the deference with which we view voluntary changes in government action, a plaintiff disputing a finding of mootness must present more than '[m]ere speculation that the City may return to its previous ways.'" *Id.* at 1256 (quoting *Nat'l Advert. Co. v. City of Miami*, 402 F.3d 1329, 1334 (11th Cir. 2005). "The key inquiry in this mootness analysis therefore is whether the evidence leads us to a reasonable expectation that the City will reverse course and reenact the allegedly offensive portion of its Code should this Court grant its motion to dismiss." *Id.* The court went on to outline three factors to guide the inquiry into whether mootness applies to a specific government action: 1) whether the conduct resulted from substantial deliberation or is merely an attempt to

---

[6] Plaintiffs argue in their Response to Federal Defendants' Motion that they are entitled to this information and therefore their Amended Complaint has not been mooted; however, the request for relief only mentions records other than voter data once, when Plaintiffs request Defendants be enjoined from utilizing the product of any materials or information obtained or produced in violation of FACA. Am. Compl., ¶ B. That has been achieved by the dissolution of the Commission.

manipulate the court's jurisdiction; 2) whether the government's decision to terminate the challenged conduct was "unambiguous"; and 3) whether the government has consistently maintained its commitment to the new policy or legislative scheme. *Id.* at 1257. *Flanigan's* did not involve a FACA Commission, and therefore the factors do not perfectly align with the events in the instant case. However, the *Flanigan's* court noted that "these factors should not be viewed as exclusive nor should any single factor be viewed as dispositive. Rather, the entirety of the relevant circumstances should be considered and a mootness finding should follow when the totality of those circumstances persuades the court that there is no reasonable expectation that the government entity will reenact the challenged legislation." *Id.*

Plaintiffs claim that the Commission was terminated to manipulate this Court's jurisdiction and was therefore not the result of substantial deliberation. Specifically, Plaintiffs allege the President dissolved the Commission in an attempt to avoid complying with an order in a separate case in the District Court for the District of Columbia, *Matthew Dunlap v. Presidential Advisory Commission on Election Integrity*, 1:17-cv-02361-CKK. The *Dunlap* case, however, is vastly different from the instant matter—Mr. Dunlap, the plaintiff, being a former Commission member, *see* Am. Comp. ¶ 42—and does not show that the termination of the Commission was an effort to thwart *this* Court's jurisdiction. Next, Plaintiffs argue that the decision was not "unambiguous" because the President tweeted, and Defendant Kobach and the President's Press Secretary stated, the Commission's work would continue at the DHS.[7] In addition, they argue the updated factual declarations submitted by the Federal Defendants in response to Plaintiffs' Emergency Motion are illusory and without substance, although they fail to provide any "reason to doubt the unequivocal representations[] made under penalty of perjury." Rep. and Rec., 28. Lastly, Plaintiffs argue that the government has not consistently maintained its commitment to ending the Commission's agenda because the statements regarding DHS show there is an intent to continue with the Commission's work. Taken in their totality, Plaintiffs argue the circumstances show that "the purported dissolution is not a sufficiently convincing policy reversal."

---

[7] Notably, the DHS is not a party to this case.

However, as I noted above, the *Flanigan's* factors are not specifically tailored to a FACA case. For Plaintiffs claims to remain alive, the government would have to recreate the Commission *and* conduct it in a way that allegedly violates FACA, the PRA, and the Constitutional Separation of Powers. *See Byrd v. U.S. E.P.A.*, 174 F.3d 239, 244 (D.C. Cir. 1999) (noting that plaintiff's "injury would be mooted if EPA convened another panel . . . in compliance with FACA and provided [plaintiff] with all panel documents either before or at the meeting"); *Citizens for Responsibility & Ethics in Washington v. Duncan*, 643 F. Supp. 2d 43, 51 (D.D.C. 2009) ("Moreover, it is undisputed that the New Panel is chartered under FACA, and to date, this panel has satisfied all of its requirements under FACA. These actions by the Department eliminate the need for this Court to grant declaratory and injunctive relief."). While Plaintiffs allege that the underlying work and secret agenda of the Commission may continue, the claims they alleged in their Amended Complaint were for violations of the FACA, PRA and the Constitutional Separation of Powers as they related to the running of the Commission. Even assuming *arguendo* Plaintiffs' claims were meritorious prior to the dissolution of the Commission, Plaintiffs have not shown how the continuation of that work by entities that are not parties to this case would violate FACA, the PRA, or the Constitutional Separation of Powers as it relates to the Federal Defendants named in this action.

The issue in this lawsuit is whether the Commission and the other named Defendants violated FACA and whether Plaintiffs have shown that the Commission is likely to be reinstated and run in such a way that violates the FACA, PRA and the Constitutional Separation of Powers. The burden is on Plaintiffs to show such reinstating of the Commission is likely, and they have not done so. Should the Commission be reinstated and run in a manner inconsistent with FACA, "the courthouse door is open to [Plaintiffs] to reinstate [their] lawsuit. Under such circumstances, the case would not be moot even if the [Commission were again dissolved] in response to the lawsuit, because such 'flip-flopping' would create a reasonable expectation that the [Defendants] would reinstate the challenged practice at the close of the lawsuit." *Jews for Jesus, Inc. v. Hillsborough Cty. Aviation Auth.*, 162 F.3d 627, 630 (11th Cir. 1998). Until that time, this case is moot.

## IV. CONCLUSION

Accordingly, it is hereby **ORDERED and ADJUDGED** as follows:

1. Florida Secretary of State's Motion to Dismiss Amended Complaint (ECF No. 86) is **GRANTED**.
2. Federal Defendants' Motion to Dismiss Plaintiffs' Amended Complaint (ECF No. 87) is **GRANTED**.
3. Plaintiffs' Amended Complaint is **DISMISSED**. The Clerk of Court shall **CLOSE** this case. All pending motions, if any, are **DENIED** *as moot*.

**DONE and ORDERED** in chambers, at Miami, Florida, this 30th day of May 2018.

*[signature]*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of record*